**UNITED STATES of America, Appellee,**

**v.**

**Fernando CARMONA, Jose Omar Sanchez, Carlos Escobar, Faoud Hassan, Angelica Carvajal, Luz Marina Carvajal, Sophie Meja Carvajal, Luis Garcia, Jesus Zambrano, Vicky Quinjano, Gonzalo Gaviria, Robert Pietri, Jose Santa Cruz–Londono, Defendants,**

**Carlos Escobar, a/k/a "Jairo Escobar", a/k/a "Javier Torres", a/k/a "Florecita", Defendant–Appellant.**

**No. 1042, Docket 87–1542.**

United States Court of Appeals, Second Circuit.

Argued May 4, 1988.

Decided Sept. 8, 1988.

---

Roger Bennet Adler, New York City (Allen Lashley, Roger Bennet Adler, P.C., New York City, of counsel), for defendant-appellant.

Ephraim Savitt, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., David C. James, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before OAKES, KEARSE and PIERCE, Circuit Judges.

PER CURIAM:

This is an appeal from a judgment of conviction entered in the United States District Court for the Eastern District of New York, Joseph M. McLaughlin, *Judge*, following a jury trial. Appellant Escobar was convicted of conspiring to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and of a substantive count of possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On appeal, Escobar claims that his conviction should be reversed principally because the district court erred (1) in denying Escobar's motion to suppress certain evidence seized from a residence in Queens, New York; (2) in overruling his objection to the admissibility of certain evidence seized from a trash receptacle in front of the Queens residence; (3) in admitting into evidence certain testimony of Detective Dennis Casey; and (4) in denying a motion for a new trial following a disclosure that certain jurors had discussed the case with one another while the trial was in progress. For the reasons below, we affirm.

1. *Suppression Motion*

On October 4, 1985, an indictment was returned in the Eastern District of New York charging appellant and eleven other individuals with various narcotics violations. Arrest warrants were subsequently issued on the basis of the indictment. Appellant Carlos Escobar was arrested on the evening of October 29, 1985, at his mother's home in Queens, New York. The cir-

cumstances of appellant's arrest and the subsequent search of the Queens residence are more fully discussed in Judge McLaughlin's published opinion, familiarity with which is assumed. *See United States v. Londono,* 659 F.Supp. 758 (E.D.N.Y. 1987).

During the course of the arrest, Police Investigator Richard Heathwood of the New York Drug Enforcement Task Force assisted in conducting a "security sweep" of the house. Heathwood noticed a block in a hollow space above the door to the attic and, upon dislodging the block, he discovered it to be a bundle containing approximately $10,300 in cash. Heathwood also discovered a metal safe or strongbox in the attic.

While the security sweep was being conducted, the arresting officer, Detective Dennis Casey, asked appellant if he would consent to a search of the house. When Escobar refused to sign a consent form, Casey spoke via telephone to Drug Enforcement Agent Mark Moger and Assistant United States Attorney Ephraim Savitt (the "AUSA") about obtaining a search warrant. Savitt first contacted United States Magistrate John Caden, who refused to entertain the application. Later on, however, Savitt and Moger contacted United States District Judge Henry Bramwell. Savitt informed Judge McLaughlin that he had told Judge Bramwell that "Magistrate Caden did not want to grant our application." Judge Bramwell issued the search warrant. Detective Casey then searched Escobar's bedroom and uncovered, *inter alia,* a red memo book later described as a narcotics ledger, some bills and invoices, and identification documents in the name of "Antonio Gallardo."

Judge McLaughlin subsequently granted Escobar's motion to suppress the bundle of currency that Investigator Heathwood had discovered in a space above the attic door, on the ground that the search was not justified under the "plain view" doctrine. *See* 659 F.Supp. at 762–63 (citing *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987)). The court then concluded that, because the discovery of the cash was necessary to establish probable cause for the ensuing search, the warrant issued by Judge Bramwell was defective. *Id.* at 763. Nevertheless, the court reasoned that the officers conducting the search acted in good faith reliance on the validity of the warrant, and that the fruits of the search—the address and memo books, the bills and invoices, and the identification documents—were therefore admissible under *United States v. Leon,* 468 U.S. 897, 920–21, 104 S.Ct. 3405, 3419, 82 L.Ed. 2d 677 (1984).

On appeal, Escobar argues that the good faith exception does not apply because the judge issuing the search warrant was misled by false information knowingly or recklessly conveyed. In particular, appellant claims that (1) the police officers intentionally stalled outside his home and extended the security sweep to search for things, in addition to people; (2) the AUSA demonstrated bad faith by applying to Judge Bramwell for a search warrant after Magistrate Caden had denied the initial request; (3) Agent Moger's affidavit in support of the search warrant was not based on personal knowledge or belief; and (4) Detective Casey omitted certain material facts from his affidavit in support of the warrant. Based on these assertions, appellant argued that the good faith exception does not apply.

We have considered these arguments and we conclude that there is no reason to disagree with the district judge's finding that the appellant failed to demonstrate that the officers acted in bad faith. We affirm the denial of the motion to suppress substantially for the reasons set forth in Judge McLaughlin's thorough opinion. *See* 659 F.Supp. at 763–64.

2. *The Garbage Search*

Appellant also challenges the district court's decision to admit into evidence certain items seized from a trash receptacle outside the Queens residence. The court admitted these items into evidence on the grounds that appellant's objection was untimely and that appellant had no reasonable expectation of privacy in the garbage. Es-

cobar argues that the court should have held a suppression hearing to determine (1) whether the evidence was admissible, and (2) whether the agents who seized the evidence from the garbage unlawfully trespassed onto the curtilage of the Escobar residence.

■ We agree with the district court that the objection was untimely. Judge McLaughlin acted within the scope of his discretion in accepting the prosecutor's statement that he had informed defense counsel of the existence of the evidence culled from the garbage five months before trial. Thus, by not moving to suppress the evidence prior to trial, appellant waived any objection to its admission pursuant to Fed.R.Crim.P. 12(b)(3). In addition, Agent Kenneth Robinson of the federal Drug Enforcement Agency testified at trial that the evidence had been seized from trash cans placed on the street curb, outside the private grounds of the house. We see no reason to second-guess the court's decision to credit the agent's testimony, and on the basis of this testimony we conclude that appellant had no reasonable expectation of privacy in the trash. *California v. Greenwood,* — U.S. —, 108 S.Ct. 1625, 1628–30, 100 L.Ed.2d 30 (1988); *United States v. Terry,* 702 F.2d 299, 308–09 (2d Cir.), *cert. denied,* 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983).

### 3. *Detective Casey's Expert Testimony*

■ Escobar challenges the district court's decision to permit Detective Casey to testify as to the meaning of the entries in the red memo book seized pursuant to the search warrant. As we have previously held, however, Fed.R.Evid. 702 permits a properly qualified law enforcement agent to testify as an expert regarding the meaning of coded language related to narcotics. *United States v. Nersesian,* 824 F.2d 1294, 1307–09 (2d Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987), *cert. denied,* — U.S. —, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987). The district court did not abuse its discretion in admitting such evidence in this case.

### 4. *Motion for a New Trial*

■ Finally, appellant claims that the district court erred by denying his motion for a new trial following a disclosure that some of the jurors had discussed the case among themselves during trial. Defense counsel notified the court of the alleged juror misconduct after the jury had returned its verdict. Judge McLaughlin thereafter questioned each juror and found that some of them had indeed discussed various minor aspects of the trial. The judge concluded, however, that these discussions had not resulted in any prejudice against the defendants.

Although we cannot lightly brush aside allegations of juror misconduct, we recognize that the trial judge has broad discretion to decide questions involving such misconduct. *See, e.g., United States v. Coven,* 662 F.2d 162, 175 (2d Cir.1981), *cert. denied,* 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed. 2d 176 (1982); *United States v. Hockridge,* 573 F.2d 752, 756 (2d Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 86, 58 L.Ed.2d 112 (1978). Judge McLaughlin interviewed each juror separately, and stated that he was "satisfied by [their] responses" that "those preliminary discussions ... did not shape the final deliberations in any way." Based on our review of the record, we conclude that the district judge did not abuse his discretion in finding that no prejudice resulted from the jurors' discussions.

We have considered appellant's other arguments and find them to be without merit. For the reasons stated above, the judgment is affirmed.