Jane L. WHEEL, Petitioner–Appellant,

v.

Stuart ROBINSON, Superintendent of Chittenden County Correctional Center, Respondent–Appellee.

No. 618, Docket 93–2307.

United States Court of Appeals, Second Circuit.

Argued Nov. 15, 1993.

Decided Aug. 25, 1994.

William K. Sessions, III, Middlebury, VT (Bonnie Barnes, Sessions, Keiner, Dumont and Barnes, P.C., of counsel), for petitioner-appellant.

David Tartter, Asst. Atty. Gen. of the State of Vt., Montpelier, VT. (Jeffrey L. Amestoy, Atty. Gen. of the State of Vt., of counsel), for respondent-appellee.

Before: MINER, MAHONEY, and HEANEY,* Circuit Judges.

MAHONEY, Circuit Judge:

Petitioner-appellant Jane Wheel appeals from an order entered April 1, 1993 in the United States District Court for the District of Vermont, Fred I. Parker, Chief Judge, that denied Wheel's petition for a writ of habeas corpus. Wheel sought to overturn her Vermont state court conviction on three counts of perjury in violation of Vt.Stat.Ann. tit. 13, § 2904.[1]

The statements that led to the perjury charges occurred during an inquest proceeding held to investigate Wheel's possible misconduct while she was an assistant judge in Vermont. The initial focus of the investigation was whether Wheel had filed vouchers in order to be paid for days when she did not work. Subsequently, the investigation focussed on whether she had altered court documents to make it appear that she had heard cases on the days indicated by the suspect vouchers. The alleged perjury resulted from her various denials at the inquest proceeding that she had done so. Her conviction by a jury on the three perjury counts was affirmed by the Vermont Supreme Court. *See State v. Wheel,* 155 Vt. 587, 587 A.2d 933 (1990).

On this appeal, Wheel contends that the district court erroneously denied her habeas petition because: (1) she was denied a fair trial by juror bias and prejudice; (2) the state trial court admitted evidence (including

---

* The Honorable Gerald W. Heaney, United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. Section 2904 provides: "A person of whom an oath is required by law, who wilfully swears falsely in regard to any matter or thing respecting which such oath is required, shall be guilty of perjury and punished as provided in section 2901 of this title."

hearsay testimony) of prior bad acts in violation of due process; (3) the evidence underlying her conviction on the second perjury count was legally insufficient because the signature of her name that was the subject of the alleged perjury was not recognizable as her handwriting; (4) the Vermont inquest procedure was unconstitutional because (a) Wheel's inability to have counsel present during the inquest was a violation of due process, and (b) a "perjury trap" was created in violation of due process because, in view of the prosecution's knowledge that it could not prosecute Wheel for the false vouchers, the sole purpose of the inquest was to induce Wheel to make false statements; and (5) the prosecution withheld exculpatory evidence from Wheel in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

We conclude that Wheel is not entitled to habeas relief, and affirm the order of the district court.

## Background

The facts of this case are extensively detailed in the opinion of the Vermont Supreme Court, *see Wheel passim*, and are set forth in this opinion only as necessary to elucidate the issues presented on appeal. From 1975 to 1987, Wheel was an assistant judge in Chittenden County, Vermont. *Wheel*, 155 Vt. 587, 587 A.2d at 936. As an assistant judge, Wheel was entitled to compensation for days when she attended court, and for performance of other "official duties." *See* Vt.Stat.Ann. tit. 32, § 1141(b).[2] During late 1985, the Attorney General of Vermont began an investigation into whether Wheel had improperly submitted false pay vouchers for days on which she did not work. *Wheel*, 155 Vt. 587, 587 A.2d at 936. The investigation disclosed several case files where it appeared that Wheel's signature or initials had been added in her handwriting to the docket entries on the file jacket. *Id.*

Three inquests followed pursuant to Vt. Stat.Ann. tit. 13, §§ 5131–5137 (one in January 1986, one on May 6, 1986, and one on May 13, 1986) to assist in the investigation of possible misconduct by Wheel and the other Chittenden County assistant judge. *Wheel*, 155 Vt. 587, 587 A.2d at 936. Wheel testified at both of the latter inquests, specifically testifying under oath at the May 6, 1986 inquest that: (1) she had never written her name on a file jacket other than contemporaneously with work performed on the case in the jacket; (2) with respect to a particular file entry dated "10/1/85," she had no recollection of having added her signature to the file jacket; and (3) with respect to a file entry dated "12/20/85," the "Judge Wheel" signature on the file jacket was not written by her. *Id.* 155 Vt. 587, 587 A.2d at 946–47.

Wheel was subsequently prosecuted for perjury with respect to the foregoing testimony. Following a jury trial, she was convicted and sentenced to forty-five days imprisonment and 1800 hours of community service. On direct appeal, the Vermont Supreme Court affirmed her conviction, *id.*, 155 Vt. 587, 587 A.2d at 936, and subsequently denied a motion for reargument. She then sought to conduct posttrial discovery by deposing a lawyer who had participated in the inquest on behalf of the State of Vermont, anticipating a motion for a new trial. The trial court disallowed the discovery, and the Vermont Supreme Court affirmed this decision. *State v. Wheel*, 157 Vt. 648, 596 A.2d 372 (1991). Wheel began serving her prison sentence on August 19, 1991. That same day, she filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Vermont.

The petition was referred to Magistrate Judge Jerome J. Niedermeier, whose report and recommendation proposed that the petition be denied. The grounds for this recommendation were: (1) the jury bias claim did not warrant habeas relief because the trial court's conclusion that no bias existed was a

---

**2.** Section 1141(b) provides in pertinent part: "Assistant judges of the superior court shall receive pay for such days as they attend court when it is in actual session, or during a court recess when engaged in the special performance of official duties." *See infra* note 6 and accompanying text regarding the timing of the introduction of compensation for performing "official duties" other than court attendance.

finding of historical fact sufficiently supported by the record; (2) the Vermont Supreme Court's affirmance of the trial court's evidentiary rulings rested on independent and adequate state law grounds that precluded habeas review, and in any event could not constitute adequately serious error to warrant habeas relief; (3) the evidence regarding the legibility of Wheel's signature was sufficient to support her conviction concerning the entry dated "10/1/85;" (4) the inquest procedure was constitutional because (a) Wheel was not in custody and accordingly was not entitled to have counsel present at the inquest, and (b) no "perjury trap" occurred because the inquest had a proper investigative purpose; and (5) there was no *Brady* violation because Wheel failed to show that any withheld information concerning the likelihood of a successful prosecution for filing false vouchers was material to her conviction on the false swearing charges.

Judge Parker adopted the report and recommendation of Magistrate Judge Niedermeier and entered an order denying Wheel's petition for a writ of habeas corpus. Wheel then appealed to this court, and Judge Parker provided a certificate of probable cause pursuant to 28 U.S.C. § 2253 and Fed. R.App.P. 22(b).

## Discussion

■ At the outset, we note that this appeal is not mooted even though Wheel completed her sentence on April 18, 1994, when she was discharged from probation.[3] A petition may be submitted for habeas relief only if the petitioner is "in custody." 28 U.S.C. § 2254(a). However, § 2254(a) requires only that "the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time [the] petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490–91, 109 S.Ct. 1923, 1925, 104 L.Ed.2d 540 (1989) (per curiam) (citing *Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554 (1968)). Further, a petition is not mooted on appeal if the petitioner is released from custody while the appeal is pending. *Id.* at 491–

92, 109 S.Ct. at 1925–26 (citing *Carafas*, 391 U.S. at 237–38, 88 S.Ct. at 1559). Thus, because Wheel filed her habeas petition while she was incarcerated, she satisfies the "custody" requirement of § 2254, and the appeal is not mooted by her subsequent completion of her sentence.

Wheel presents the same arguments on appeal that she addressed to the district court. We proceed to consider them.

### A. *Jury Bias.*

Wheel contends that the cumulative effect of a series of incidents at her perjury trial denied her a fair trial because of jury bias.

The first incident occurred when the court clerk reported that one of the jurors, apparently frustrated by the rigors of jury sequestration, said "I don't care about that woman. I just care about my wife and myself." In response, the trial court interviewed the juror *in camera*, but on the record. Before doing so, he solicited questions from counsel and reviewed with counsel the questions that he would ask the juror. The juror denied making the remark, and asserted that he could be fair and impartial in deciding the case. The transcript of the interview was then read to counsel; defense counsel requested that the clerk be interviewed in view of the conflicting testimony. The court then interviewed the court clerk, two deputy sheriffs who were present at the time the remark was allegedly made, and all the jurors (including a second interview of the juror in question). The clerk was interviewed in the presence of counsel, and the transcript of the other interviews was read to counsel. The court received assurances from each juror that he or she had not prejudged the case.

The next incident occurred when two deputy sheriffs reported statements allegedly made by a juror that she resented "the people in the courtroom" for wasting time, and hoped that she could remain impartial. The trial judge interviewed the juror, and accepted her assurances that (1) she remained impartial, and (2) nothing had occurred to prevent her from deciding the case fairly and

---

**3.** Wheel was incarcerated from August 19, 1991 to September 6, 1991. She was released from jail, but subjected to house arrest, from Septem-ber 6–16, 1991. She was discharged from probation on April 18, 1994.

impartially. The transcript of the interview was read to counsel.

The final incident arose when a court reporter advised the trial judge about a statement by a friend of the reporter who worked for the bus company that was transporting the jurors. The friend had related that one of the bus drivers had advised complaining jurors that if they wanted a quick end to the trial, they should "just find her [Wheel] guilty." The trial judge interviewed each of the jurors, and had court personnel interview the deputy sheriffs who were present on the buses. None of these interviews yielded any evidence that the purported comment had in fact been made. The trial judge reported the deputy sheriffs' denial of the incident to counsel.

After the trial judge had investigated all these incidents, Wheel moved for a mistrial. The court denied the motion, asserting that "there has been nothing presented that would indicate any prejudice to [Wheel]." On direct appeal, the Vermont Supreme Court found that the trial court's determination regarding the absence of jury bias was not an abuse of discretion. *Wheel*, 155 Vt. 587, 587 A.2d at 941–42. In the habeas proceeding, the magistrate judge applied a presumption of correctness to the state trial court's conclusion that the jury was not biased, pursuant to 28 U.S.C. § 2254(d),[4] and concluded that this finding was sufficiently supported by the record.

Wheel contends on this appeal that: (1) the district court erred in applying the statutory presumption of correctness to the trial judge's ruling on jury bias because she did not receive a full, fair, and adequate hearing in the state court proceeding; and (2) in any event, the trial court's factual determination was clearly erroneous. She argues that the

hearing was inadequate because the trial judge interviewed the jurors *in camera*, without the participation of counsel.

Wheel premises her challenge to the *in camera* proceedings upon the "requirement in *Remmer* [*v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954) ] and *Smith v. Phillips*, 455 U.S. 209 [102 S.Ct. 940, 71 L.Ed.2d 78] (1982) that parties be permitted to participate in the hearing." These cases do not support her position. In *Remmer*, the jury foreman was investigated by the Federal Bureau of Investigation during the course of a criminal trial because of an improper contact with that juror by "a person unnamed." 347 U.S. at 228, 74 S.Ct. at 450. The resulting F.B.I. report was considered by the judge and the prosecutors alone. *Id.* The Supreme Court directed a posttrial hearing to determine whether the defendant had been prejudiced. *Id.* at 230, 74 S.Ct. at 451–52.

In *Smith*, a juror submitted an application for employment as an investigator to the office of the district attorney that was conducting the prosecution, and this fact was not revealed to the court or the defense until after the defendant was convicted. 455 U.S. at 212–13, 102 S.Ct. at 943–44. The trial judge then held a hearing and denied a new trial, ruling that these events did not influence the jury's verdict. *Id.* at 213, 102 S.Ct. at 944. The Supreme Court agreed, stating: "This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Id.* at 215, 102 S.Ct. at 945 (citing *Remmer*, 347 U.S. at 229–30, 74 S.Ct. at 451–52).

Obviously, neither of these cases addresses the procedures to be followed by a trial judge

---

**4.** 28 U.S.C. § 2254(d) provides in pertinent part:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court ..., shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

....

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding....

when a question of jury bias is being investigated during a trial. Further, "[i]n treating charges of jury misconduct, the trial judge is accorded broad discretion." *United States v. Hockridge,* 573 F.2d 752, 756 (2d Cir.) (collecting authorities), *cert. denied,* 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978); *see also United States v. Carmona,* 858 F.2d 66, 69 (2d Cir.1988) (per curiam) (same); *United States v. Barnes,* 604 F.2d 121, 144 (2d Cir. 1979) (same), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980); *United States v. Panebianco,* 543 F.2d 447, 457 (2d Cir.1976) ("Because of his continuous observation of the jury in court, a trial judge's handling of alleged juror misconduct or bias is only reviewable for abuse of discretion."), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977).

In both *Hockridge* and *Carmona,* the trial judge interviewed jurors *in camera.* Indeed, in *United States v. Ianniello,* 866 F.2d 540 (2d Cir.1989), we remanded for a *Remmer* posttrial hearing, and stated: "We leave it to the district court's discretion to decide the extent to which the parties may participate in questioning the witnesses, and whether to hold the hearing in camera." *Id.* at 544; *see also United States v. Calbas,* 821 F.2d 887, 896 (2d Cir.1987) ("we find no substance in Calbas's suggestion that the district court acted improperly in conducting a limited inquiry and in failing to allow counsel to participate in the questioning of jurors" in a *Remmer* posttrial hearing), *cert. denied,* 485 U.S. 937, 108 S.Ct. 1114, 99 L.Ed.2d 275 (1988). Furthermore, these cases all involved direct appeals in federal trials, and "the Due Process Clause of the Fourteenth Amendment cannot possibly require more of a state court system." *Smith,* 455 U.S. at 218, 102 S.Ct. at 946 (footnote omitted); *see also Patton v. Yount,* 467 U.S. 1025, 1038, 104 S.Ct. 2885, 2892 (1984).

In light of these precedents, we conclude that the trial judge's careful *in camera* investigation of the incidents at issue, his solicitation of questions from counsel and review with them of the questions that he would ask with respect to the first incident, and his reporting to counsel regarding the interviews that were conducted in all three cases clearly satisfied the requirements of due process and § 2254(d). The trial court's findings on jury bias are therefore entitled to the § 2254(d) presumption of correctness.

Further, the trial court's determination of the issue was not clearly erroneous. The question presented is whether there is "fair support in the record for the state court's conclusion that the jurors here would be impartial." *Patton,* 467 U.S. at 1038, 104 S.Ct. at 2892–93. Each incident of asserted jury bias or misconduct was the subject of careful inquiry, and resulted in a determination that the impartiality of the jury had not been compromised. "[T]he determination is essentially one of credibility,.... [and] the trial court's resolution of such questions is entitled ... to 'special deference.'" *Id.* (quoting *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 500, 104 S.Ct. 1949, 1959, 80 L.Ed.2d 502 (1984)). We accordingly have no basis to gainsay these determinations by the trial judge regarding jury bias and impartiality, which were amply supported by the record in this case.

## B. *The Evidentiary Claims*

Wheel contends that the admission of trial testimony pursuant to Vt.R.Evid. 404(b)[5] concerning her submission of vouchers for days on which she did not hear cases violated her due process rights. *See Wheel,* 155 Vt. 587, 587 A.2d at 943. Specifically, Wheel challenges the testimony of Diane LaVallee, a deputy clerk, and Randall Moran, the state investigator who investigated whether Wheel had submitted false vouchers.

LaVallee testified that she and Wheel had frequently discussed the proposition that Wheel was only entitled to state pay when sitting on cases. The thrust of LaVallee's testimony was apparently to establish, on the basis of what Wheel had said during their conversations, that Wheel knew that she could be paid only for days when she sat on

---

5. The Vermont Rules of Evidence are apparently numbered in correspondence with, and are generally identical to, the Federal Rules of Evidence.

*Cf. Wheel,* 155 Vt. 587, 587 A.2d at 944 n. 8 (noting that Rule 803(7) is "virtually identical" in both codes).

cases. As to any hearsay claim, Wheel's statements were admissible as admissions by a party. Vt.R.Evid. 801(d)(2)(A).

■ The Vermont Supreme Court ruled that Moran's testimony regarding the absence of entries in court records (with respect to Wheel's attendance at trials) was admissible pursuant to Vt.R.Evid. 803(10) (hearsay exception exists for evidence of the absence of a public record or an entry in a public record that would normally have been recorded had the event taken place). *See Wheel,* 155 Vt. 587, 587 A.2d at 944–45. The court also ruled that Moran's testimony concerning statements by other judges "was elicited on redirect following a cross-examination by [Wheel] designed to show that [Moran's] investigation was incomplete and in bad faith, [and] was perfectly proper to rehabilitate the witness." *Id.* 155 Vt. 587, 587 A.2d at 945. The evidence was not admitted for the truth of the statements made to Moran, and the jury was so instructed. We perceive no significant issue, and certainly no issue of constitutional dimensions, in either of these rulings regarding Moran's testimony.

In a pretrial ruling, the trial court determined that this "evidence was relevant to the issue of [Wheel's] motive and intent, and that its probative value outweighed any prejudicial effect." *Wheel,* 155 Vt. 587, 587 A.2d at 942–43; *see also* Vt.R.Evid. 404(b), 403. The magistrate judge concluded that (1) the evidentiary determinations by the trial judge were premised on adequate and independent state grounds, and (2) in any event, even if the evidence was improperly admitted, it was not sufficiently material to the outcome of Wheel's perjury trial to warrant habeas relief. *See Collins v. Scully,* 755 F.2d 16, 18–19 (2d Cir.1985). We agree with these rulings, especially in view of our perception that there has been no significant showing of error in the trial court's evidentiary rulings.

C. *Sufficiency of the Evidence as to Count Two.*

■ The second count on which Wheel was convicted is based upon Wheel's denial, at the May 6, 1986 inquest, that she had signed a docket entry dated October 1, 1985. Wheel contends on this appeal that there was insufficient evidence for the jury to convict her on this count because the signature on the file docket was not recognizable as her handwriting. The Vermont Supreme Court found the signature "readily discernible," *Wheel,* 155 Vt. 587, 587 A.2d at 947, and noted that "at trial, [Wheel] . . . examined a copy of the . . . signature and admitted that it was her signature." *Id.* Consequently, the court ruled that: "The jury had sufficient evidence to conclude that defendant's testimony at the inquest amounted to a false denial that she had signed the file jacket in question." *Id.* On habeas review, the magistrate judge, citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), upheld the determination by the Vermont Supreme Court that there was sufficient evidence for a rational jury to convict Wheel on the second count of perjury. We affirm this ruling.

■ The standard of review of a sufficiency claim by a federal habeas court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *see also United States v. Lindsay,* 985 F.2d 666, 672 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 103, 126 L.Ed.2d 70 (1993); *United States v. Pitre,* 960 F.2d 1112, 1120 (2d Cir.1992). In *Jackson,* the Court explained that:

> [A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

443 U.S. at 326, 99 S.Ct. at 2793.

Assessed by this rigorous standard, the evidence was clearly sufficient to sustain Wheel's conviction for perjury with respect to the October 1, 1985 docket entry.

D. *Constitutionality of the Inquest.*

■ The Vermont inquest is "an investigatory proceeding conducted by the state's attorney to aid him in deciding whether prose-

cution is warranted in relation to a crime." *State v. Alexander*, 130 Vt. 54, 61, 286 A.2d 262, 266 (1971). The proceeding is conducted before a judge, who is authorized to compel the attendance of witnesses. Vt.Stat.Ann. tit. 13, § 5132. A witness may leave the proceeding at any time to consult with counsel, but counsel is not permitted to be present during the witness' testimony. A witness may assert the privilege against self-incrimination.

 Wheel contends that the Fifth Amendment required that she be able to have her attorney present during inquest testimony, and that her conviction must be overturned because that right was denied to her. However, a witness has no constitutional right to have counsel present during grand jury testimony. *See United States v. Mandujano*, 425 U.S. 564, 581, 96 S.Ct. 1768, 1779, 48 L.Ed.2d 212 (1976) (plurality opinion) ("Under settled principles the witness may not insist upon the presence of his attorney in the grand jury room.") (citing Fed. R.Crim.P. 6(d)); *see also In re Groban*, 352 U.S. 330, 333, 77 S.Ct. 510, 513, 1 L.Ed.2d 376 (1957) (no constitutional right to counsel in giving testimony before fire marshall); *cf.* Fed.R.Crim.P. 6(d) (limiting attendees at grand jury proceeding to government attorneys, testifying witness, interpreters, and stenographers).

Wheel contended at oral argument that the Vermont inquest is distinguishable from grand jury proceedings because the purpose of the grand jury is to protect the accused, while the inquest serves as an investigative tool for the prosecution. Investigative powers, however, are inextricably interwoven with the grand jury's central protective function. *See Mandujano*, 425 U.S. at 571, 96 S.Ct. at 1774 (" 'The grand jury's investigative power must be broad if its public responsibility is adequately to be discharged.' Indispensable to the exercise of its power is the authority to compel the attendance and the testimony of witnesses, and to require the production of evidence.") (quoting *United States v. Calandra*, 414 U.S. 338, 344, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974)) (citations omitted). Further, the Vermont inquest proceeding, like a grand jury proceed-

ing, can serve a protective function by affording potential defendants the opportunity to present exculpatory or mitigating evidence to the prosecutor. Indeed, a significant purpose of prosecutorial investigation is to winnow out unsubstantiated charges. Accordingly, although there are differences between the Vermont inquest and grand jury proceedings, we do not view these differences as precluding the precedential force of *Mandujano* and *Groban*, which bar our adoption of Wheel's argument on this issue.

 Further, it is well settled that even constitutional deficiencies in the underlying proceeding do not prevent prosecution for perjury. *See United States v. Wong*, 431 U.S. 174, 179–80, 97 S.Ct. 1823, 1826–27, 52 L.Ed.2d 231 (1977). As we stated in *United States v. Holroyd*, 732 F.2d 1122 (2d Cir. 1984): " 'Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood.' " *Id.* at 1127 (quoting *Bryson v. United States*, 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969)).

Wheel also contends that her conviction must be reversed because the inquest constituted an impermissible "perjury trap" that was violative of due process. "A 'perjury trap' is created when the government calls a witness ... for the primary purpose of obtaining testimony from him in order to prosecute him later for perjury." *United States v. Chen*, 933 F.2d 793, 796–97 (9th Cir.1991) (citing *United States v. Simone*, 627 F.Supp. 1264, 1268 (D.N.J.1986); *United States v. Crisconi*, 520 F.Supp. 915, 920 (D.Del.1981)); *see also United States v. Catalano*, No. 92 Cr. 1189 (LLS), 1993 WL 183694, at *4 (S.D.N.Y. May 25, 1993).

All of these cases recognized the possibility of a "perjury trap" doctrine, but in each case the court concluded that the defendant's due process rights were not violated. *Chen* explicitly stated that the court "need not decide in this case whether to embrace the perjury trap doctrine" because "the facts render the perjury trap defense inapplicable in any event." 933 F.2d at 797. We reach the same

conclusion in this case, and accordingly do not decide whether the "perjury trap" defense is available in the Second Circuit.

■ Wheel presents a number of arguments regarding the unfairness of the inquest proceeding. They are convincingly refuted in the opinion of the Vermont Supreme Court, *see Wheel,* 155 Vt. 587, 587 A.2d at 937–39, and we will not repeat that analysis here. Her main contention stems from an interpretive order of the Vermont Supreme Court that was issued in February 1986, and specified that assistant judges could "receive pay for such days as they attend court when it is in actual session, or during a court recess when engaged in the special performance of official duties." *Wheel,* 155 Vt. 587, 587 A.2d at 937 n. 3. She contends that this ruling precluded any prosecution based upon her having falsified docket entries to pretend that she had attended court when she had not in fact done so, with the result that the only purpose of the inquest was to trap her into committing perjury. As the Vermont Supreme Court correctly concluded, however, any false docket entries by Wheel could be the basis of "coverup" charges independent of the question of false pay vouchers, so that "even assuming the Supreme Court's 'official duties' definition foreclosed any chance of a prosecution on the false pay voucher charge, the scope of the inquest properly included any coverup activities undertaken by [Wheel]." *Wheel,* 155 Vt. 587, 587 A.2d at 939 (footnote omitted).[6] There was therefore a legitimate basis both for the inquest and for the particular questions that Wheel answered falsely, precluding any application of the "perjury trap" doctrine.

E. *The Brady Claim.*

Based upon her contention that as a result of the Supreme Court's "official duties" ruling she could not be prosecuted for submitting false pay vouchers, Wheel argues that the State violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by not revealing to her that the prosecutors

"had no substantive offense to charge." Specifically, she maintains that the prosecutor's knowledge that there was no substantive purpose for the inquest was material to her "perjury trap" defense, and that knowledge should therefore have been disclosed to her pursuant to *Brady.* In view of our resolution of the "perjury trap" issue, it is clear that Wheel's *Brady* claim is not tenable.

### Conclusion

The order of the district court denying Wheel's petition for habeas corpus is affirmed.

---

6. It is noteworthy in this connection that the docket entries as to which Wheel was convicted for false testimony occurred prior to the February 1986 Supreme Court definition of "official duties." *See Wheel,* 155 Vt. 587, 587 A.2d at 939

n. 4 (Wheel reviewed case files in January 1986). In addition, the Chief Justice of the Vermont Supreme Court testified at trial that there was an open question whether the February 1986 ruling would be retroactively effective.