11-0756-cr
United States v. Balkany

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 19th day of March, two thousand twelve.

PRESENT:  AMALYA L. KEARSE,
          JOHN M. WALKER, JR.,
          GERARD E. LYNCH,
                    *Circuit Judges.*

-------------------------------------------------------------------

UNITED STATES OF AMERICA,

        *Appellee*,

      v.                    No. 11-0756-cr

MILTON BALKANY, a/k/a YEHOSHUA BALKANY

        *Defendant-Appellant.*

-------------------------------------------------------------------

| | |
|---|---|
| FOR DEFENDANT–APPELLANT: | PAUL SHECHTMAN, Stillman, Friedman & Shechtman, P.C., New York, NY. |
| FOR APPELLEE: | MARC P. BERGER, Assistant United States Attorney (Jesse M. Furman, Assistant United States Attorney, *on the brief*) *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY. |

Appeal from the United States District Court for the Southern District of New York (Denise Cote, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Milton Balkany, a rabbi and the dean of a religious girls school, was indicted in May 2010 and charged with extortion, wire fraud, blackmail, and making false statements to a federal law enforcement official. The indictment alleged that Balkany approached SAC Capital Advisers ("SAC"), a Connecticut-based hedge fund, and threatened that a federal inmate over whom he had influence as a religious counselor would accuse Steven A. Cohen, SAC's founder and head, of having committed insider trading unless SAC gave four million dollars to charities Balkany operated. The indictment also alleged that, in furtherance of this scheme, Balkany called the United States Attorney's Office for the Southern District of New York and lied to a federal investigator. At the close of trial, the jury convicted Balkany on all charges, and the District Court sentenced him principally to a term of 48 months in prison. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

First, Balkany argues that the District Court erred by denying his request for a jury instruction on entrapment. A valid entrapment defense "has two related elements: government inducement of the crime, and lack of predisposition on the part of the defendant to engage in the criminal conduct." United States v. Johnson, 14 F.3d 766, 771 (2d Cir. 1994) (internal quotation marks omitted); see also United States v. Brand, 467 F.3d 179, 189 (2d Cir. 2006). "If a defendant presents credible evidence of government inducement, then

2

the prosecutor must show predisposition beyond a reasonable doubt." United States v. Bala, 236 F.3d 87, 94 (2d Cir. 2000). A defendant "is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." Mathews v. United States, 485 U.S. 58, 62 (1988). Conversely, a court is not required to give such a charge where the "evidence is insufficient as a matter of law to establish the defense." United States v. Paul, 110 F.3d 869, 871 (2d Cir. 1997).

The District Court did not err in refusing to give an entrapment charge because Balkany failed to present any evidence that the government "induced" him to commit the crimes charged. The inducement inquiry focuses on whether "the government initiated the crime" or, put another way, whether the prosecution "set the accused in motion." Brand, 467 F.3d at 190 (internal quotation marks omitted). As Judge Learned Hand noted, acts of inducement can include "soliciting, proposing, initiating, broaching or suggesting the commission of the offence charged." United States v. Sherman, 200 F.2d 880, 883 (2d Cir. 1953). While the burden of demonstrating inducement is "relatively slight," we have nonetheless emphasized that it "should not be treated as a hollow requirement" and cannot be satisfied by "simply point[ing] to the government's use of an undercover agent." Brand, 467 F.3d at 190 (internal quotation marks omitted).

As the government notes, the evidence with respect to the extortion, wire fraud, and blackmail counts[1] established that it was Balkany who first made an unsolicited call to SAC,

---

[1] Balkany's appellate brief makes no effort to argue that he was entrapped into making false statements to a federal law enforcement official, and any such claim is therefore waived.

claiming that he had damaging information that Cohen had engaged in insider trading which he urgently wanted to share. Then, at the December 20, 2009 meeting with Martin Klotz, SAC's outside counsel, which occurred before the government was ever notified that Balkany had contacted SAC, Balkany (1) falsely claimed that a federal prisoner was being pressured by prosecutors to cooperate against Cohen; (2) invited Klotz to ask Cohen about the stocks allegedly involved and to report back whether Balkany should instruct the prisoner to cooperate or not; and (3) raised the prospect of Cohen's making contributions to certain charities with which Balkany was associated if Balkany were to instruct the prisoner not to cooperate. Given these facts, it is clear that Balkany, not the government, "took the first step that led" to the extortion, wire fraud, and blackmail charges. United States v. Salerno, 66 F.3d 544, 548 (2d Cir. 1995). As the District Court put it, "it's the defendant who initiates this entire course of action. . . . And in that very first conversation the rabbi puts both halves of the crime right on the table: The threat and the ask. I want charitable contributions, and what I have is damaging information."

Balkany suggests, however, that the government induced his crimes because on December 30, 2009 Klotz, by that time acting on the government's instructions, indicated that SAC was in fact concerned about four of the six stocks Balkany had previously mentioned. This argument is unavailing. Klotz's statements were a response to Balkany's invitation to identify which stocks the prisoner should or should not talk about, and therefore did not initiate any crimes. Moreover, although Klotz did lead Balkany to believe that SAC was concerned about the allegations, as the government correctly notes, he did not then

4

suggest or propose that Balkany defraud, blackmail, or extort SAC. At most, the government "merely afforded an opportunity . . . for the commission" of these crimes, which is insufficient to warrant an entrapment instruction. Mathews, 485 U.S. at 66. Accordingly, the District Court did not err by refusing to instruct the jury on entrapment.

Second, Balkany argues that Klotz was improperly allowed to give his opinion that Balkany had committed the charged crimes when, during redirect examination, he used terms such as "threat," "fraud," and "ultimatum." In particular, Balkany claims that Klotz's testimony that he felt that his clients SAC and Cohen were being threatened and defrauded violated Federal Rule of Evidence 701 because it was not "helpful to clearly understanding the witness's testimony or to determining a fact in issue." We disagree. Through his questions on cross-examination, defense counsel sought to create the impression that Klotz did not believe that Balkany had issued a "threat" in their first meeting. As the District Court found, this cross-examination opened the door to Klotz's redirect testimony, which clarified that while Klotz did not think that Balkany had expressly threatened his clients, he did believe that Balkany was implicitly threatening to cause them harm. See United States v. Diaz, 176 F.3d 52, 80 (2d Cir. 1999) ("[R]edirect may be used to rebut false impressions arising from cross-examination and the trial judge is in the best position to determine whether such a false impression was created." (internal quotation marks omitted)). The latter testimony, by countering the false impression created by defense counsel's questioning, satisfied Rule 701's requirement that lay opinion testimony be "helpful."

We also reject Balkany's argument that the redirect testimony created a danger of unfair prejudice to him. When Klotz used the terms "threat" and "fraud," the District Court carefully instructed the jury that it should take those words in their "common everyday" sense, and that the Court would provide the legal definitions of those terms when charging the jury at the close of trial. There was nothing complicated about those instructions, and we presume that the jury followed them. United States v. Joyner, 201 F.3d 61, 69-70 (2d Cir. 2000).

Finally, we reject Balkany's argument that his conviction for making a false statement must be set aside because the government "manufactured the crime" via a "perjury trap." As Balkany recognizes, our court has discussed but has never adopted the "perjury trap" doctrine, under which the government would violate due process by "call[ing] a witness . . . for the primary purpose of obtaining testimony from him in order to prosecute him later for perjury." Wheel v. Robinson, 34 F.3d 60, 67 (2d Cir. 1994) (internal quotation marks omitted); see also United States v. Regan, 103 F.3d 1072, 1079 (2d Cir. 1997). We need not decide in this case whether a defendant may ever invoke the "perjury trap" doctrine, because that defense is unavailable on the facts here. Unlike in "perjury trap" cases involving compelled grand jury testimony, see Wheel, 34 F.3d at 67 (collecting cases), Balkany was under no obligation to speak to the federal investigator to whom he lied (and who was, unbeknownst to Balkany, the lead investigator of Balkany's extortion scheme). Indeed, it was Balkany who called the investigator, not the other way around, because Balkany wanted the United States Attorney's Office to interview the prisoner who Balkany claimed was under

6

his religious influence in order to pressure SAC and Cohen. Assuming arguendo that due process protects the unwilling defendant forced to testify in a sham grand jury proceeding designed only to catch him in a lie, it offers no shelter to a defendant whose false statement conviction arises from his own proactive efforts to manipulate federal officials into unwittingly furthering his criminal scheme.

We have considered Balkany's other arguments and find them to be without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court