**PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT
_____

No. 10-3882
_____

UNITED STATES OF AMERICA
                            Appellant

v.

JOEMON D. HIGDON
A/K/A JOEMON D. HIGDEN
A/K/A JOEMON HIGDOM
A/K/A JOEMON DEANDRE HIGDON
                            Appellee


Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-09-cr-00742-001)
District Judge: The Honorable John P. Fullam

Argued January 26, 2011

Before: McKEE, *Chief Judge*, SMITH, *Circuit Judge*,
and STEARNS,* *District Judge*

(Opinion Filed:   March 17, 2011)

Francis C. Barbieri, Jr. Esq.
Andrew J. Schell, Esq., Jeffery W. Whitt, Esq.
Robert A. Zauzmer, Esq. (Argued)
Office of United States Attorney
615 Chestnut Street

_____

* Honorable Richard G. Stearns, District Court Judge, United
States District Court for the District of Massachusetts, sitting
by designation.

Suite 1250
Philadelphia, PA 19106
        *Attorneys for Plaintiff-Appellant*

Paul M. George, Esq. (Argued)
McKinney & George
239 South Camac Street
Philadelphia, PA 19107
        *Attorney for Defendant-Appellee*


OPINION


McKEE, *Chief Circuit Judge*.

The United States appeals the district court's refusal to inform a jury about a stipulation that was entered into with defense counsel. The government also petitions this court for a writ of mandamus directing the United States District Court for the Eastern District of Pennsylvania to properly instruct a jury on the elements of the crime of illegal possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), that was charged in this case. Although mandamus is an exceptional remedy, we conclude that the troubling circumstances of this case require granting the writ to correct the trial court's continuing abuse of discretion in failing to inform the jury of the elements of the charged offense. Accordingly, we will grant the petition and remand the case for trial. We also find that we have jurisdiction to review the court's refusal to inform the jury about the stipulation. Given the district court's conduct in this case, we feel that we have no alternative but to direct the Chief Judge of the District Court to reassign this matter to a different judge on remand.

## I. Factual Background

Joemon D. Higden, a previously convicted felon, was indicted for possessing a firearm in or affecting interstate commerce, in violation of 18 U.S.C. § 922(g)(1).[1] The matter was assigned on

---

[1] Higden's last name has been spelled in the record as Higdon as well as Higdom. We adopt the spelling that Higden used

2

July 20, 2010 to United States District Court Judge John P. Fullam, a very experienced and hard working senior judge.

At trial, the government called Lisa Walker, who testified that Higden came to her home on the night in question with a gun, and that she called the police after Higden fired the gun in the street. Two police officers responded to the call. The officers testified that they observed Higden crouched over on the street. They also said that they heard a clanking noise, and later found a gun in the same area where Higden had been.

Prior to trial, Higden stipulated that he had been previously convicted of a felony and that the gun the police retrieved in this case had traveled in interstate commerce. Higden did not initially object to introducing the stipulations at trial. They included the following:

> The firearm listed in the Indictment – a 9mm Taurus semi-automatic handgun, Model PT92AFS, serial number TAR1146, loaded with 14 rounds of 9mm ammunition – has been test-fired, is operable, and is a "firearm" as defined within Title 18, United States Code, Sections 922(g)(1) and 924(e).
>
> * * *
>
> The firearm listed in the Indictment - a 9mm Taurus semi-automatic handgun, Model PT92AFS, serial number TAR1146, loaded with 14 rounds of 9mm ammunition – was manufactured outside of the Commonwealth of Pennsylvania and was therefore "in or affecting [interstate] commerce" within the meaning of Title 18, United States

_____

in his brief as well as that which his counsel used during the *voir dire*. *See* App. 27.

3

> Code, Sections 922(g)(1) and 924(e) on or about September 20, 2009.
>
> * * *
>
> Prior to September 20, 2009, defendant Joemon D. Higd[e]n had been convicted in a court of the Commonwealth of Pennsylvania of a felony crime, punishable by imprisonment for a term exceeding one year, within the meaning of Title 18 United States Code, Sections 922(g)(1) and 924(e).

App. 20–22.

Despite both parties agreeing that the jury would be informed about these stipulations, the district court did not permit the government to mention them to the jury.  Rather, during *voir dire*, the judge only told the potential jurors:

> Now the charge brought by the Government is that the defendant, Mr. Higd[e]n, had possession of a firearm which it was illegal for him to possess in those circumstances . . . . The charge is that the defendant was not legally permitted to have possession of a firearm, and the Government says on a particular occasion he did have possession of a firearm.

App. 27-28.

The Assistant United States Attorney ("AUSA") prosecuting the case repeatedly objected to the district court's refusal to inform the jury of the relevant charge.

4

On the first day of trial, the AUSA asked Judge Fullam in chambers whether he could refer to the prior felony conviction in his opening statement. The AUSA apparently made that request because Judge Fullam described Higden's offense to the potential jurors as simply "possession of a firearm which [] was illegal for him to possess in those circumstances," App. 27, without mentioning the other two elements of § 922(g)(1). Judge Fullam denied the request and told the prosecutor that Higden's stipulation about his prior conviction would not be sent to the jury.

The following morning, the judge held another conference in chambers at the prosecutor's request. The AUSA again asked if he could inform the jurors of the elements of the charged offense, and cited precedent of this court. The AUSA argued that, at a minimum, the court should colloquy the defendant to ensure that he had agreed to waive his right to have all of the elements of § 922(g) established by proof beyond a reasonable doubt to the jury. The court denied both requests.

After returning to the courtroom, the court reiterated that the stipulation regarding Higden's prior convictions would not be provided to the jury "in spite of the Government's position." App. 126. The court then cut off the prosecutor's attempts to make a record, asking the AUSA: "Are you getting paid by the day or what[?]" App. 127. The prosecutor then requested a brief stay to consult with superiors in his office about the possibility of filing a petition for mandamus. App. 124. The court refused and chided the prosecutor, stating: "You go right ahead, but you're not going to get a stay. You're expected to act like human beings." App. 124.

As promised, during the trial, the court refused to permit the government to inform the jury of any of the stipulations. Thus, the jury was not informed that the defendant had a prior felony conviction, nor was the government allowed to present evidence to establish that the firearm had travelled in interstate commerce – two of the three elements that the government had to prove beyond a reasonable doubt to convict Higden of violating § 922(g).

At the conclusion of the trial, before the court instructed the jury, the prosecutor reiterated his request that the court colloquy the defendant about the effect of the stipulations. The prosecutor asked for "a very brief colloquy that [the defendant] understands that he agrees to give up his right to have the jury decide the other two

5

elements." App. 158. The court denied the request, explaining "[b]ecause he's agreed – defendant has already agreed to those. We've been over this enough. Please be seated. You're wasting our time." App. 158.

In the parties' proposed jury instructions, both Higden and the government agreed that the jury should be instructed on all of the elements of the offense. The language that the attorneys agreed to largely tracked the Third Circuit model jury instructions, which addresses all of the elements of § 922(g)(1).[2] However, the instruction that the court actually gave deviated significantly from the model instructions, and consisted mostly of boilerplate language pertaining to the definition of "evidence," the presumption of innocence, and reasonable doubt. The court's entire instruction on § 922(g)(1) was as follows:

> The issue in this case, as you know by now, is does the evidence establish beyond a reasonable doubt that the defendant, Mr. Higd[e]n, had possession of this firearm at the time in question, namely, last September 20, 2009.
>
> * * *
>
> I'm sure that when you carefully consider the evidence and the arguments of counsel that are based on that evidence, you will have little difficulty in understanding that your job is to

---

[2] The Third Circuit's model jury instruction regarding a stipulation is as follows:

"The Government and the defendant(s) have agreed that (set forth stipulated fact(s)) (is)(are) true. You should therefore treat (this fact)(these facts) as having been proved. You are not required to do so, however, since you are the sole judge of the facts."

Model Third Circuit Crim. Jury Instruction 4.02.

6

> decide whether the evidence
> which was actually presented does
> or does not establish beyond a
> reasonable doubt that the
> defendant, Mr. Higd[e]n, had
> possession of this firearm, that he
> knew he had possession and knew
> it was a firearm.

App. 203-04.  Thus, not only did the court fail to inform the jury of the fact of a prior felony and the need to find that the gun travelled in interstate commerce, which were two of the three elements of the charged offense, but the court also offered no instruction on the meaning of "possession."[3]

After nearly a day of deliberation, the jury pronounced that it was deadlocked.  App. 229.  Judge Fullam responded by taking the highly unusual step of proposing the following: "[A]ssuming that the jury is somewhat evenly divided, would there be any consideration in accepting a majority vote for the jury?"  App. 227.  The government rejected the idea and reminded the court that a criminal jury's verdict must be unanimous.  App. 228.  Defense counsel stated that he "could not in good conscience" agree to the court's suggestion without knowing the vote.  App. 227-28.  The court responded by telling the attorneys that "both sides are entitled to the same information," but noting: "[s]o far you've been informed that it's fairly even."[4]  App. 227.  Afterwards, the court informed the

---

[3]  "Possession" is clearly a common term and it may not, at first, appear to require definition.  However, that is not the case when a defendant is charged with a possessory offense, especially where, as here, the contraband was not found on his person.  Thus, the term should have been explained to the jury.  *See United States v. Weatherly*, 525 F.3d 265, 270 (3d Cir. 2008).

[4]  The court added: "I don't propose to let you know what the ultimate outcome would be by a majority vote. I don't think that's fair to either side, unless – unless you want it. I don't know."  App. 227.  When neither attorney responded, the court observed: "I hear a deafening silence." App. 228. Defense counsel finally told the court that he "did not have the guts . . . to recommend that to [his] client[;]" and the court

parties that the vote was 7 in favor of guilty and 5 in favor of not guilty. The court scheduled a second trial for September 27, 2010, pointing out that it would "retry it at vast expense and effort." App. 228.

In advance of the scheduled retrial, the government filed a motion *in limine* on September 15, 2010, in which it moved: (1) that the court advise the jury at the outset that the charge in this case is possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (2) that the government be permitted to present to the jury evidence and argument regarding each of the elements of the § 922(g)(1) offense, including stipulations regarding two of the elements; and (3) that the court instruct the jury at the conclusion of the trial regarding each of the elements of the offense. App. 236-57. Although Higden had originally agreed with the government that the jury should be instructed about the stipulations, he now opposed the government's motion arguing that the government sought to prejudice his case. App. 259-62.

The district court denied the motion *in limine*. In doing so, Judge Fullam explained that at the first trial, he followed his "normal procedure," App. 7, of informing the jury that the defendant was not lawfully permitted to have possession of a firearm on the occasion in question, and that he intended to follow this practice at the second trial as well.[5] Judge Fullam asserted that the "only conceivable purpose," App. 7-8, for the government's desire to inform the jury

---

asked the AUSA: "[i]s the government counsel any more courageous?" App. 228.

[5] Judge Fullam has adopted this practice in at least two other cases. In *United States v. Harold Brunson*, No. 10-4039, 2011 WL 758839 (3d Cir. Mar. 3, 2011), Judge Fullam denied the government's motion *in limine* to instruct the jury about all of the elements of the § 922(g)(1) offense. The government filed an appeal and petition for writ of mandamus, which has been granted. In *United States v. Darrell Bell*, No. 10-454 (E.D. Pa.), in the wake of the *Higden* case, the government filed a motion *in limine* requesting that the court advise the jury regarding each element of the § 922(g)(1) offense. Judge Fullam entered an order continuing the case pending our decision in the present appeal.

8

about the felony conviction would be to prejudice Higden. Rather than proceed with the trial, the government filed this appeal and petitioned for mandamus.

Higden subsequently filed a motion to bifurcate the evidence. App. 271-72. He asked that the jury be informed of the prior conviction if, and only if, it first concluded that he possessed the firearm in question. The government filed a response opposing the motion and the district court stayed the case because the government's appeal was pending. App. 276-81.

## II. Standard of Review

The district court's decision regarding the admissibility of evidence is reviewed for abuse of discretion. *United States v. Serafini*, 233 F.3d 758, 768 n.14 (3d Cir. 2000). We apply the same standard in reviewing a district court's determination that the risk of unfair prejudice does not substantially outweigh the probative value of otherwise admissible evidence. *See United States v. Mathis*, 264 F.3d 321, 326-27 (3d Cir. 2001).

## III. Discussion

### A. Jurisdiction

The Criminal Appeals Act, 18 U.S.C. § 3731, governs when the government can take an interlocutory appeal. Higden maintains that this appeal falls outside of the permission granted in that Act and that we therefore lack jurisdiction. Section 3731 provides in pertinent part:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district

9

> court that the appeal is not taken
> for purpose of delay and that the
> evidence is substantial proof of a
> fact material in the proceeding.

Higden argues that jurisdiction does not lie under § 3731 because the district court neither suppressed nor excluded any evidence. However, the Supreme Court has explained that the legislative history of § 3731 "makes it clear that Congress intended to remove all statutory barriers to [g]overnment appeals and to allow appeals whenever the Constitution would permit." *United States v. Wilson*, 420 U.S. 332, 337 (1975). This is consistent with the language of the statute itself, which states that "[t]he provisions of this section shall be liberally construed to effectuate its purposes." 18 U.S.C. § 3731.

Here, the court refused to introduce stipulations regarding Higden's prior felony and the fact that the firearm had traveled in interstate commerce. The court then denied the government's motion to introduce evidence about the stipulated facts at the retrial. The court's order constituted an evidentiary ruling that effectively suppressed proof of the facts set forth in the stipulation including evidence of Higden's prior conviction.

Accordingly, we conclude that § 3731 confers appellate jurisdiction to review the district court's order prohibiting the stipulation being admitted into evidence. *See United States v. Helstoski*, 576 F.2d 511, 521 (3d Cir. 1978) ("Section 3731 was designed to allow appeals from [district court orders] to insure that prosecutions are not unduly restricted by erroneous pre-trial decisions to exclude evidence.").

However, § 3731 does not allow us to exercise jurisdiction over the district court's refusal to properly charge the elements of the offense for which Higden was on trial. That ruling did not suppress or exclude evidence. Rather, it prohibited the jury from learning the definition of the crime with which Higden was charged. We know of no authority that would allow us to stretch the parameters of § 3731 far enough to cover a court's refusal to inform the jury of the elements of the crime(s) with which the defendant is charged.

Nevertheless, that does not end our jurisdictional inquiry because the government claims that the court's refusal to properly

charge a jury is appropriate for mandamus relief pursuant to 28 U.S.C. § 1651. Higden contends that we lack jurisdiction to issue a writ of mandamus because the district court did not exceed the lawful exercise of its discretion. However, as we will explain, we believe that this case is precisely the sort of "extraordinary" situation where a writ of mandamus is warranted. *Kerr v. United States Dist. Court*, 426 U.S. 394, 402 (1976); *In re Nwanze*, 242 F.3d 521, 524 (3d Cir. 2001).

## B. The Stipulation

In order to establish a violation of § 922(g)(1), the government must establish each of the following elements beyond a reasonable doubt: (1) the defendant has been convicted of a crime punishable by imprisonment for a term exceeding one year; (2) the defendant knowingly possessed the firearm; and (3) the firearm had travelled in interstate commerce. *United States v. Dodd*, 225 F.3d 340, 344 (3d. Cir. 2000). Here, the court only informed the jury about the second element – whether Higden had possessed the gun the government introduced into evidence.

We have previously rejected the idea that a defendant's stipulation to an element of an offense removes that element entirely from the jury's consideration. In *United States v. Williams*, 612 F.2d 735 (3d Cir. 1979), the defendant agreed to stipulate to his prior conviction and asked the district court to preclude the government from referring to his status as a convicted felon. *Id.* at 740. However, the government refused to join the tendered stipulation, and the district court did not require the government to do so. *Id.* Rather, the government introduced evidence of the prior conviction and the defendant subsequently appealed his conviction. On appeal, we summarized the issue regarding the proposed stipulation as follows:

> Counsel for the appellant offered in effect to modify the statute by stipulating that the appellant was a convicted felon and to preclude thereby any mention to the jury of the appellant's felony status either by argument of counsel for the government or through instructions to the jury by the

11

court on the elements of the crime. Counsel for government refused to join in such a stipulation, and the court refused to require the government so to do.

*Id*. We held that "[t]he court did not err." *Id*. We explained that "we perceive no authority for counsel or the court to modify a criminal statute enacted by Congress by eliminating through stipulation one of the elements of the crime." *Id*. We further noted that even if the stipulation "did not go so far as to constitute the modification of a criminal statute, '[t]he Government was not required to accept a judicial admission . . . of the defendant but had a right to proffer proof on the point admitted.'" *Id*. (quoting *United States v. Brickey*, 426 F.2d 680, 686 (8th Cir. 1970)) (ellipsis in original).

Our holding in *Williams* is consistent with the Supreme Court's recognition that the protections of the Sixth Amendment entitle every criminal defendant to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000). The constitutional right to trial by jury has, "as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.'" *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993). That fundamental component of a jury trial cannot be negated or abridged by stipulation. Therefore, although a stipulation may provide a mechanism for proving facts that constitute an element of an offense, it cannot prevent a jury from performing its role as the ultimate finder of fact as to all those facts required to prove the elements of an offense beyond a reasonable doubt.

Every court of appeals that has addressed the issue before us has reached the same conclusion. In *United States v. Gilliam*, 994 F.2d 97, 100 (2d Cir. 1993), the Court of Appeals for the Second Circuit held that removing an element from the jury's consideration upon a stipulation would offend the function of the jury. The court explained that "[w]ithout full knowledge of the nature of the crime, the jury cannot speak for the people or exert their authority." *Id*. at 101. Indeed, the court emphasized that removing an element of the

12

crime from the jury's consideration "violates the very foundation of the jury system." *Id*. at 100.

Similarly, in *United States v. Milton*, 52 F.3d 78, 81 (4th Cir. 1995), the Court of Appeals for the Fourth Circuit held that removing the prior felony element of the § 922(g)(1) offense from the jury's consideration "prevents the government from having its case decided by the jury, and changes the very nature of the charged crime." Accordingly, the court held that the district court must instruct the jury of all the elements of the crime charged. *Id.*; s*ee also United States v. Barker*, 1 F.3d 957, 959 (9th Cir. 1993), *amended*, 20 F.3d 365, 366 (9th Cir. 1994); *United States v. Birdsong*, 982 F.2d 481, 482 (11th Cir. 1993); *United States v. Collamore*, 868 F.2d 24, 27-29 (1st Cir. 1989); *United States v. Bruton*, 647 F.2d 818, 825 (8th Cir. 1981) (en banc); *United States v. Brinklow*, 560 F.2d 1003, 1006 (10th Cir. 1977).

Higden counters by arguing that none of these cases are relevant because they pre-date the Supreme Court's decision in *Old Chief v. United States*, 519 U.S. 172 (1997), which Higden contends is directly on point. There, as here, the defendant was a convicted felon who had been charged with possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *Id*. at 175. The defendant stipulated to the prior felony and moved for an order to prevent the government from presenting evidence of his prior offense because of its likelihood to prejudice the jury. *Id*. The district court denied the order and the court of appeals affirmed, finding that the government was entitled to introduce probative evidence to prove the prior offense, regardless of the defendant's stipulation offer. *Id*. at 177. The Supreme Court reversed. *Id*. at 192.

The Court held that the district court abused its discretion by spurning the defendant's offer to stipulate to the prior offense because the admissibility of the evidence would be prejudicial to the defendant. *Id*. at 174. The Court was sensitive to the specific problem raised by § 922(g)(1) and the prior felony conviction element. The Court explained that "there can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant." *Id*. at 185. Therefore, the Court reasoned that the trial court should have accepted the stipulation because "[the defendant's] proffered admission . . . presents the District Court with alternative, relevant, admissible and

seemingly conclusive evidence of the prior conviction," *Id*. at 186, that would allay the risk of unfair prejudice to the defendant.

However, *Old Chief* does not stand for the proposition that evidence of a defendant's prior conviction is not admissible when a defendant offers to stipulate to the conviction. Rather, the Court held only that the "name or general character of that crime" need not be disclosed because "the fact of the qualifying conviction is alone what matters under the statute." *Id*. at 190. In fact, the Court anticipated that a jury *would be informed* of the stipulation about a defendant's prior conviction. The Court explained that: "the most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possession of a gun, and this point may be made readily in a defendant's admission and underscored in the court's jury instructions." *Id*. at 190-91. Thus, the Supreme Court did not hold, as Higden contends, that the jury need not be informed of the *fact* of a prior conviction when that prior conviction is an element of the charged offense. On the contrary, the Court affirmed that the jury must still be made aware of the *existence* of a defendant's prior conviction.[6]

---

[6]     Higden also cites to *United States v. Mason*, 85 F.3d 471 (10th Cir. 1996) in support of his position that a jury should not be informed of a defendant's prior conviction, even if it is an element of the charged offense. In *Mason*, the defendant was prosecuted under 18 U.S.C. § 922(g) and the parties stipulated to the prior felony conviction and interstate commerce elements of the offense. *Id*. at 471-72. The district court then instructed that because the parties stipulated to these elements, "the government need not offer proof as to these elements, and you should consider them proven by the government." *Id*. at 472.

On appeal, the defendant argued that the district court erred by withholding the stipulated elements from the jury's consideration. Finding no error in the district court's jury instructions, the Court of Appeals for the Tenth Circuit reasoned that "the jury need not resolve the existence of an element when the parties have stipulated to the facts which establish that element . . . the judge has not removed the consideration of an issue from the jury; the parties have." *Id*. Higden's reliance on this case is wholly misplaced because

14

Our analysis of *Old Chief* is consistent with other post-*Old Chief* decisions, which conclude that a district court may not entirely exclude a stipulated fact from the jury's consideration when that fact constitutes an element of an offense. In *United States v. Chevere*, 368 F.3d 120, 122 (2d Cir. 2004), the Court of Appeals for the Second Circuit held that in a prosecution under § 922(g)(1), there are "no circumstances" where a district court may remove the element of a prior felony conviction entirely from the jury's consideration by accepting a defendant's stipulation to that element. Consistent with the holding in *Old Chief*, the court explained that "[a]lthough a defendant may, by stipulating that he has a prior felony conviction, prevent the jury from hearing the nature or underlying facts of the conviction, he may not prevent the jury from learning *the fact that he has a prior felony conviction – a 'crucial element' of the offense."* *Id*. at 121 (emphasis in original). Similarly, in *United States v. Amante*, 418 F.3d 220 (2d Cir. 2005), the court quoted heavily from its earlier opinion in *Gilliam*, 994 F.2d 100, in finding that withholding an element of a crime from a jury's consideration places the jury "in a position only to make findings of fact on a particular element without knowing the true import of those findings." *Id*. at 223. The court reasoned that a defendant's "prior conviction is a 'critical element' of § 922(g)(1) that cannot be divorced from the crime." *Id*.

Moreover, our reasoning here is informed not only by our own precedent and the persuasive reasoning of our sister circuit courts of appeals, but also by the practical implications of failing to instruct a jury about all elements of this offense. Possession of a firearm is ordinarily not a crime, and the emotions and fervor surrounding efforts to restrict gun ownership are all too familiar to require citation. Therefore, it is quite likely that a juror would be concerned about prosecuting someone merely for possessing a firearm, particularly if the juror is a gun owner. Although no one other than the people on Higden's first jury can know why it deadlocked, common sense suggests that it may well have been

the Tenth Circuit never found that the district court could refuse to inform the jury of the prior conviction or the elements that make up the charged offense. On the contrary, the district court judge *explicitly advised the jury of the elements of § 922(g)(1), including the prior felony element*, and the Tenth Circuit found no error in that instruction. *Id*. at 471.

15

because of concerns about convicting someone for simply possessing a gun. The fact that the first trial resulted in a hung jury also suggests that at least some of the jurors may have been confused about why Higden was on trial in the first place. *See Old Chief*, 519 U.S. at 189 ("People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard."). Furthermore, the district court's jury instructions were so cursory that it is entirely possible that the jury surmised that Higden had been charged with an entirely different offense altogether. For example, it is a federal crime for an illegal alien to possess a gun. *See* 18 U.S.C. § 922(g)(5).

In addition, failing to instruct the jury about the prior felony element of the § 922(g)(1) offense would have the impermissible effect of allowing the district court to modify a congressionally enacted criminal statute by eliminating an element of the crime through stipulation. It is also contrary to fundamental concepts of a jury trial. *See United States v. Haywood*, 363 F.3d 200, 207 (3d Cir. 2004) ("[O]mission of an essential element of an offense [in a jury instruction] *ordinarily* constitutes plain error.'") (quoting *United States v. Xavier*, 2 F.3d 1281, 1287 (3d Cir. 1993)) (emphasis in original); *United States v. Cornish*, 103 F.3d 302, 307 (3d Cir. 1997) (finding that the jury should be informed about a stipulated element); *Williams*, 612 F.2d at 740 (rejecting the appellant's proffered stipulation on grounds that it would modify a criminal statute).

We, of course, realize the danger of undue prejudice inherent in any attempt to inform a jury that a defendant has a prior criminal conviction. Such evidence can certainly create bias that could increase the likelihood of a conviction on something other than evidence. We have previously recognized that a government's proffered reasons "to admit prior bad act evidence may often be [a] Potemkin [Village], because the motive, we suspect, is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character." *United States v. Sampson*, 980 F.2d 883, 886 (3d Cir. 1992). Here, however, Higden's prior conviction is not merely a consequential fact, it is *an element of the crime charged*. Thus, any prejudice results from the requirements of

16

the statute itself, and is best addressed by an appropriately forceful limiting instruction.[7]

Nevertheless, we are not so naïve as to believe that a curative instruction will always vitiate all possibility of prejudice in every case. It will, however, help to balance the district court's obligation to inform the jury about the charge at issue on the one hand, and the defendant's right to a fair trial by an unbiased fact finder on the other. *See Zafiro v. United States*, 506 U.S. 534, 540-41(1993) (noting the presumption that jurors follow limiting instructions); *United States v. Liburd*, 607 F.3d 339, 344 (3d Cir. 2010) ("[W]hile curative instructions cannot repair every error, we do generally presume that juries follow their instructions."); *Gilliam,* 994 F.2d at 100 ("But where the district court issues a proper curative instruction, we must presume that a conscientious jury will only use the proof of the prior conviction to satisfy the element of the crime.").

---

[7] We agree that courts must diligently attempt to prevent the kind of prejudice that "clouds impartial scrutiny and reasoned evaluation of the facts," *United States v. Starnes,* 583 F.3d 196, 215 (3d Cir. 2009), by ensuring that prosecutors do not attempt to exploit the defendant's record. Thus, at the very least, forceful and carefully tailored curative instructions will almost always be required.

For example, *see Gilliam*, 994 F.2d at 99, in which the Second Circuit cited with approval the district court's limiting instructions with respect to a § 922(g) offense:

> Now, I want to firmly instruct you in this connection that the prior conviction that is an element of the charge here and is not disputed, is only to be considered by you for the fact that it exists. And for nothing else. You are not to consider it for any other purpose, you are not to speculate as to what it was for or anything else. It is not to be in any way considered by you on whether it is more likely than not that the defendant was in knowing possession of the gun that is charged, which is the disputed element of the offense here charged.

In addition, Higden's claim of undue prejudice here is further undermined by the fact that evidence of a defendant's prior bad act can be admitted as proof of motive, intent, knowledge, or any number of other factors under Fed.R.Evid. 404(b). *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988)). It is true that evidence of prior bad acts is excluded under Rule 404(b) when it involves "*other* crimes, wrongs, or acts." Rule 404(b) (emphasis added). However, Higden's prior conviction proves an element of the charged offense and is therefore not evidence of some "other" crime.

## C. Bifurcation of the Trial

As an alternative to the procedure that the district court adopted in Higden's first trial, Higden contends that we should approve a bifurcated second trial. Under the proposed bifurcated procedure, the jury would learn about the prior conviction only after determining whether Higden was in possession of a firearm. In his motion to bifurcate, Higden contends that bifurcation "would allow the government to present evidence regarding all elements of the offense without predisposing the jury to resolve the element of possession against Defendant on the basis of his prior record." App. 271. In other words, Higden asserts that a bifurcated procedure would help mitigate any undue prejudice that would arise by the jury knowing of his prior conviction at the outset of the trial.

The district court did not rule on Higden's motion to bifurcate the evidence because it stayed the case on the basis of the government's appeal. Therefore, the bifurcation issue is not before us. We will note, however, that we have rejected a bifurcated procedure under similar circumstances. *See United States v. Jacobs*, 44 F.3d 1219, 1223 (3d Cir. 1995). [8]

---

[8] In *Jacobs*, we held that the trial court was not permitted to sever the trial of a single § 922(g) offense to prevent the jury from learning of a defendant's prior felony conviction until it resolved other elements. We reasoned that bifurcation would deprive the jury of knowledge of the very crime with which the defendant was charged, which was an untenable result. *Id.* Since our decision in *Jacobs*, every appellate court that has addressed whether a single count indictment under § 922(g)(1) should be entitled to a bifurcated trial has rejected the idea. *See Amante*, 418 F.3d at 225; *United States v. Clark*, 184 F.3d 858, 866-68 (D.C. 1999); *United States v.*

18

## D. Writ of Mandamus as a Remedy

The All Writs Act gives appellate courts the power to issue a writ of mandamus "in exceptional cases where the traditional bases for jurisdiction do not apply." *In re Pasquariello*, 16 F.3d 525, 528 (3d Cir. 1994). The Act states that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Traditionally, the writ of mandamus has been used "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661 (1978). The writ is a drastic remedy that "is seldom issued and its use is discouraged." *Lusardi v. Lechner*, 855 F.2d 1062, 1069 (3d Cir. 1988).

Nevertheless, the need for a writ of mandamus is "obvious" in certain very rare circumstances. *Blasband v. Rales*, 979 F.2d 324, 328 (3d Cir. 1992). "For example, mandamus is appropriate when a district court has failed to adhere to the mandate of an appellate court." *In re Chambers Development Co., Inc.*, 148 F.3d 214, 224 (3d Cir. 1998); *see also Delgrosso v. Spang & Co.*, 903 F.2d 234, 237 (3d Cir. 1990).

---

*Koskela*, 86 F.3d 122, 125 (8th Cir. 1996); *United States v. Dean*, 76 F.3d 329, 332 (10th Cir. 1996); *Milton*, 52 F.3d at 80-81; *Birdsong*, 982 F.2d at 482; *Barker*, 1 F.3d at 959; *Collamore*, 868 F.2d at 28. As we explained in *Jacobs*, bifurcation under these circumstances puts the jury in the difficult position of deciding the guilt or innocence of a defendant without knowing all of the elements of the crime that is charged. *Jacobs*, 44 F.3d at 1222.

This does not, however, mean that other appropriate steps cannot be taken to minimize the danger of undue prejudice that could almost certainly result from the jury learning of the defendant's prior felony conviction. Indeed, courts should attempt to minimize and mitigate that danger, but they must do so in ways that are appropriate, consistent with precedent, and do not deprive the jury of the information it needs to appropriately determine the defendant's guilt for the charged offense.

In order for a court to issue the writ, (1) the petitioner must have no other adequate means to obtain the desired relief, and (2) the petitioner must meet its burden of showing that its right to the writ is clear and indisputable. *Cheney v. U.S. Dist. Ct. D.C.*, 542 U.S. 367, 380-81 (2004). Even when these prerequisites are met, however, the issuance of a writ is "largely discretionary." *Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 461 (3d Cir. 1996).

We find that both elements have been met here. First, it is crystal clear that the government has "no other adequate means" of compelling the district court to instruct the jury of all elements of the § 922(g) offense. As noted above, the prosecutor repeatedly asked the district court, both in conferences held in chambers as well as in the courtroom, to inform the jury of the relevant charge. The prosecutor also requested on two occasions that the court colloquy Higden to confirm that he agreed to waive his right to have all of the elements of the crime found by a jury beyond a reasonable doubt.[9] The court denied these requests. The prosecutor then asked for a stay to permit consultation with his superiors regarding the possibility of filing a petition for mandamus. That request was similarly denied. The government then filed a motion *in limine* requesting the district court to properly instruct the jury about each of the elements of § 922(g)(1) at the conclusion of the trial. That request was also denied by the district court. The government thus exhausted all possible options, and was left with no alternative but to allow the retrial to proceed under the same circumstances as the first trial, or to seek relief by writ of mandamus.

The second requirement for mandamus relief is also satisfied here. The court's insistence on giving an improper jury charge constitutes "clear and indisputable" error, *Cheney*, 542 U.S. at 381, especially given the district court judge's stated intention of repeating his "usual practice" at the retrial. App. 7-8. We have recognized that "the adoption of a clearly erroneous jury instruction

---

[9] This request was apparently based upon the AUSA's awareness that allowing the case to be submitted to the jury based only upon the stipulation to two elements without requiring (or allowing) any proof of those elements would be tantamount to waiving the defendant's constitutional right to a jury trial as to the two elements that were the subject of the stipulations.

that entails a high probability of failure of a prosecution – a failure the government could not then seek to remedy by appeal or otherwise – constitutes the kind of extraordinary situation in which we are empowered to issue the writ of mandamus." *United States v. Wexler*, 31 F.3d 117, 129 (3d Cir. 1994).

This is such an extraordinary situation. The district court refused to abide by controlling precedent that a jury must be instructed about all of the elements of an offense. The precedent is not only clear, but is fundamental to the jury system. In addition, the court's conduct placed the government in a very precarious situation. On one hand, any conviction based on the flawed jury instruction the court insisted on giving would almost surely have been reversed, thereby subjecting the defendant to another retrial. On the other hand, an acquittal after a flawed jury instruction would leave the government with no ability to appeal because the protections of the Double Jeopardy Clause would apply. *See Wexler*, 31 F.3d at 128.

The situation is especially problematic here because, as we noted above, possession of a firearm is not a crime under ordinary circumstances, and it is now clear that an individual has a constitutional right to possess a gun. *See District of Columbia v. Heller,* 554 U.S. 570, 635 (2008) (holding that the District of Columbia's ban on handgun possession in the home violates the Second Amendment, as there is an individual right to gun ownership). A juror who is asked to convict someone merely for possessing a gun under "these circumstances," App. 27, with no explanation about the "circumstances" that make possession a crime, could well be both confused by the charges and reluctant to convict for conduct that s/he knows is not ordinarily criminal. It is hard to believe that some jurors would have been anything other than puzzled as well as distrustful given the erroneous and incomplete jury charge here.

We are also deeply troubled that the district court would even entertain the notion of accepting a majority vote from the jury, in clear violation of a defendant's constitutional right to a unanimous jury verdict in a federal criminal trial. *See McDonald v. City of Chicago,* 130 S.Ct. 3020, 3035 n.14 (2010) (explaining that the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal cases); *United States v. Beros*, 833 F.2d 455, 461 (3d Cir. 1987) ("[J]ust as the [S]ixth [A]mendment requires jury unanimity in federal criminal cases on each delineated offense

21

that it finds a defendant culpable, it must also require unanimity regarding the specific act or acts which constitutes that offense." (internal citation omitted)) .[10] Accordingly, we affirmatively exercise our discretion and conclude that the circumstances here merit mandamus relief. *See Amante*, 418 F.3d 220. In granting mandamus relief, we are aware that another panel of this Court has now decided the case of *United States v. Harold Brunson*. *See* note 6, *supra*.[11] There, as here, the same district court judge refused to follow the precedent of this circuit and instead insisted upon conducting a trial according to his own personal view of the law and his own custom.

The resulting situation is as unfortunate as it is regrettable. We noted at the outset that Judge Fullam is a very experienced and hard working jurist and he has devoted decades of service to the federal bench. Nothing we have said in this opinion should detract from that. However, neither this court, nor any other court, can tolerate a situation where a judge decides to follow his/her own custom and concepts of justice rather than the precedent of the applicable appellate court or the United States Supreme Court. Ours is a nation of laws, not judges.

In granting relief, we have acknowledged that human frailties may well predispose jurors against a defendant charged with violating § 922 and result in a conviction based primarily upon a

---

[10] Indeed, the district court judge's suggestion that defense counsel and the AUSA consider agreeing to decide the outcome by a majority vote of a closely divided jury is so bizarre that it is tempting to assume that the court was simply joking. However, the judge did nothing to correct the impression that he was serious and neither side interpreted the court's overture as anything other than a serious suggestion. Both attorneys responded as if the court was serious and nothing suggests that they were mistaken in doing so.

[11] *Brunson* is a nonprecedential opinion. However, we do not refer to it here by way of authority. Rather, our reference is only intended to provide the context of this appeal and mandamus petition. Moreover, given the conclusion of the unanimous panel in *Brunson*, it is clear that this case must be assigned to a different judge on remand.

22

prior criminal record even where the evidence might not otherwise support a conviction.  Nonetheless, we cannot accept a situation of a judge taking it upon himself/herself to mitigate prejudice in a manner that undermines the very laws the judge has taken an oath to uphold and defend.

Nor can all that happened here be dismissed as the result of the court's concern for ensuring that Higden received a fair trial.  We can think of few procedures that would be more prejudicial to a defendant's constitutional rights, nor more inimical to the concept of a right to a jury trial embodied in the Sixth Amendment, than the court's suggestion that this case be decided by a majority vote of a closely divided jury. We are therefore simply at a loss to understand the court's behavior.

Finally, we are not convinced that the district court was justified in believing that the government's only intent in eliciting proof of Higden's prior conviction was to unduly prejudice him.  Although that may sometimes be the case, nothing on this record suggests that the prosecutor here was concerned about anything other than informing the jury of the elements of the charged offense as defined by Congress when he asked to inform the jury of the *existence* of the prior felony conviction.[12]

In light of these unfortunate circumstances, we will grant the petition for mandamus.  We must also exercise our authority to direct the Chief Judge of the Eastern District of Pennsylvania to reassign the case to another district court judge on remand.  *See*

---

[12] We realize that there are certainly instances where the government may seek to admit a defendant's prior bad acts in an effort to prejudice the jury.  While referring to admissibility of prior bad acts under Fed. R. Evid. 404(b), we have noted that there are "obvious dangers inherent in evidence of uncharged bad acts, and the adversarial tendency of the proponents of such evidence to be less than candid about their motives for offering evidence that suggests that a defendant's character is suspect." *United States v. Morley*, 199 F.3d 129, 139 (3d Cir. 1999).  However, an examination of the record in this case makes clear that the prosecutor merely sought to make the jury aware of the elements of the charged offense.

*Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 167 (3d Cir. 1993) ("We are authorized to order the reassignment of this case to another district court judge pursuant either to the All Writs Act, 28 U.S.C. § 1651(a) or 28 U.S.C. § 2106."). Although we recognize that "[t]he decision to remove a judge from an ongoing trial should be considered seriously and made only rarely," *Huber v. Taylor*, 532 F.3d 237, 251 (3d Cir. 2008), the district court's troubling actions in this case leave us with no alternative.

## IV. Conclusion

For the foregoing reasons, we will grant the writ of mandamus and remand for additional proceedings consistent with this opinion. In doing so, we will direct the Chief Judge of the District Court for the Eastern District of Pennsylvania to assign this case to a different judge.