**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1440
_____

UNITED STATES OF AMERICA

v.

EUDINIA MARTINEZ,
                              Appellant
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 3-10-cr-00219-003)
District Judge: Honorable Freda L. Wolfson
_____

Submitted Under Third Circuit LAR 34.1(a)
June 21, 2012

Before: AMBRO, VANASKIE, and ALDISERT, *Circuit Judges*

(Filed: August 29, 2012)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

        Defendant Eudinia Martinez appeals her conviction for conspiracy to distribute

and possess with intent to distribute various illegal drugs.  Martinez contends that the

District Court abused its discretion under Fed. R. Evid. 404(b) by admitting evidence of

1

events occurring prior to the charged conspiracies. Finding no abuse of discretion, we will affirm.

## I.

Since we write principally for the parties, we set forth only those facts essential to our analysis.

Martinez is a Cuban national who immigrated to the United States in April 2008 to join her husband, Roberto Carmenate Osorio. At the time, Osorio worked as a driver transporting drugs from Florida to New Jersey for Juan Orama, a drug dealer in Miami. Osorio completed more than twenty drug runs for Orama between 2008 and 2009, and Martinez accompanied him on four or five of these runs.

In June 2008, the Drug Enforcement Agency ("DEA") obtained a search warrant for Martinez's and Osorio's Florida residence based on suspicions that it was being used as a marijuana grow house. Martinez was present when the DEA conducted the search and discovered 41 marijuana plants and various paraphernalia used in the growing operation. Both Osorio and Martinez were arrested, although criminal charges against Martinez were later dismissed because she claimed she was unaware of the growing operation.

In the fall of 2009, Martinez and Osorio moved to North Bergen, New Jersey, where they shared an apartment with two Mexican drug dealers, Bernabe Osuna and Juan LaBrada. Martinez negotiated the rent for the North Bergen apartment and was responsible for paying the security deposit and rent for November and December.

In October 2009, Nestor Gibbs, a distributor who had worked with Osorio on the drug runs, began cooperating with law enforcement as a confidential informant. Gibbs informed law enforcement officials that Osorio was no longer working for Orama, and that Osuna and LaBrada were now supplying Osorio with drugs.

In December 2009, Gibbs negotiated two drug sales with Osorio. The first sale took place on December 2, 2009, in the parking lot outside of a laundromat near the North Bergen residence. A DEA Agent saw Osorio and LaBrada load a laundry basket containing two kilograms of cocaine into Gibbs's car, and observed Martinez at the laundromat during the sale. Earlier that day, the Agent had observed Osorio, LaBrada and Martinez loading the laundry basket along with other bags into their vehicle at the North Bergen residence.

On December 8, 2009, Osorio and Osuna were arrested while en route to conduct a second sale of six kilograms of cocaine and 100 grams of heroin. Later that day, Martinez was at the North Bergen residence when law enforcement officials executed a search warrant for the apartment and discovered 8 kilograms of marijuana and 41 grams of crack cocaine, a large amount of cash, drug paraphernalia, and a drug ledger listing a $58,000 debt that Gibbs owed for the two kilos of cocaine. Martinez was subsequently arrested.

Following their arrests, Martinez and Osorio, still unaware that Gibbs was an informant, attempted to collect the $58,000 that Gibbs owed for the sale at the laundromat. Since both were in jail, Martinez solicited her sister to collect the money.

In March 2010, a grand jury sitting in the District of New Jersey returned a four-count indictment charging Martinez, Osorio, and Osuna with conspiracies to distribute and possess with intent to distribute cocaine (Count I), cocaine base or "crack" (Count II), heroin (Count III), and marijuana (Count IV), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 841(b)(1)(C), 841(b)(1)(D), and 846. The indictment charged that the conspiracies operated from May 2009 through March 2010. Osorio and Osuna pleaded guilty to the charges and Martinez proceeded to trial.

The Government argued at trial that Martinez participated in the conspiracy by renting the apartment used to store the drugs, helping to load the drugs into the car prior to the laundromat sale, receiving money from at least one drug sale, and attempting to collect the drug debt from Gibbs. It contended that her presence at the laundromat sale and in the house where the drugs were stored supported an inference that she was aware of the conspiracy and joined it intentionally. Martinez maintained that she had no knowledge of the drug-dealing activities of Osorio, Gibbs, Osuna, and LaBrada, and therefore that she lacked the requisite intent to join the conspiracy.

Prior to trial, the Government filed a motion pursuant to Rule 404(b) to introduce evidence of Martinez's presence in drug-dealing situations that predated the events in the charged conspiracies. The evidence concerned two events: (1) Martinez's presence at the June 2008 search and arrest of Osorio at the Florida grow house; and (2) her presence during a February 12, 2009 drug run to New Jersey when Osorio delivered drugs to Gibbs. According to Gibbs, Martinez was sitting in the passenger seat while he and Osorio unloaded marijuana from the hidden compartment in the back of the car and

4

replaced it with $45,000 cash. The Government sought to introduce this evidence to discredit Martinez's "mere presence" defense. The Court granted the Government's motion, finding the evidence admissible under Rule 404(b) to show Martinez's knowledge of her husband's drug-dealing activities and her intent to join the conspiracy. The evidence was admitted at trial, and the Court gave the jury a limiting instruction explaining the restricted purposes for which the evidence was offered and could be considered.

On July 20, 2010, following a seven-day trial, the jury returned a verdict finding Martinez guilty on all four counts. On September 8, 2010, the District Court denied Martinez's Rule 29 motion for a judgment of acquittal. On February 14, 2011, the Court sentenced her to four concurrent 30-month terms of imprisonment.

On appeal, Martinez contends that the Court abused its discretion by admitting the evidence of her presence on the drug run and at the grow house. She argues that the evidence was not admissible under Rule 404(b) or the other Federal Rules of Evidence, and that the error in admitting it was not harmless because the Government could not have proven its case without this evidence.

II.

We exercise jurisdiction over this case pursuant to 28 U.S.C. § 1291. We review a district court's rulings concerning the admissibility of evidence for abuse of discretion. *United States v. Higdon*, 638 F.3d 233, 238 (3d Cir. 2011). "To the extent that our review of this ruling requires us to consider the district court's interpretation of the rules of evidence, our review is plenary." *United States v. Givan*, 320 F.3d 452, 460 (3d Cir.

5

2003) (citation omitted). "This includes plenary review 'of whether evidence falls within the scope of Rule 404(b).'" *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010) (quoting *United States v. Cruz*, 326 F.3d 392, 394 (3d Cir. 2003)).

III.

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). We apply a four-part test for admission of Rule 404(b) evidence: "(1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted." *Givan*, 320 F.3d at 460; (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)). Applying this test, we hold that the District Court properly admitted the evidence of Martinez's presence during the February 2009 drug run and the June 2008 search of the grow house.

Evidence of prior acts "satisfies the first two requirements if it is 'probative of a material issue other than character.'" *United States v. Cross*, 308 F.3d 308, 321 (3d Cir. 2002) (quoting *Huddleston*, 485 U.S. at 685). The Government introduced evidence of Martinez's presence in prior drug-dealing situations to establish her knowledge of and intent to join the conspiracies. Knowledge and intent are acceptable non-propensity purposes for prior acts evidence and are also material issues in this case, as the

6

Government not only had the burden of proving these elements, but Martinez also put them at issue by disputing them.

Moreover, the evidence of Martinez's presence in these two situations was indeed probative of her knowledge of and intent to join the drug conspiracy. Her presence during the search of the Florida grow house and Osorio's drug delivery to Gibbs supports a reasonable inference that she was aware that Osorio and Gibbs were involved in drug-dealing activities. This awareness makes it more probable that she knew about the charged conspiracies, and thus undercuts her principal defense that she lacked knowledge of their drug dealing and thus had no intent to join the conspiracies.

Her knowledge also supports an inference that her actions—including renting the apartment where the drugs were stored and attempting to recover the drug debt from Gibbs—were done with an intent to facilitate the conspiracy. Indeed, her awareness of the drug dealing makes it more probable that she knew she was collecting a drug debt from Gibbs, and she knew that the apartment she rented would be used to store drugs for the conspiracy.[1] Thus, inasmuch as showing Martinez's knowledge of and intent to join the conspiracies was essential for the Government to meet its burden of proof, and

---

[1]Martinez contends that her presence on the February 2009 drug run "proves only that [she] kept her husband company as he drove from Florida to New Jersey," and that this companionship is "what one could expect a spouse to do; it is not an act in furtherance of the illegal acts of the claimed conspiracy." (Appellant Br. at 17-18.) Martinez's presence on the February 2009 drug run, however, serves to undermine her lack-of-knowledge defense, and was not presented as an act in furtherance of the conspiracies. Gibbs testified at trial that Martinez was in the passenger seat while he and Osorio, sitting next to her in the driver's seat, had a discussion about the drug compartment in the car, and when he and Osorio unloaded the drugs from the compartment and replaced it with cash. This evidence supports a reasonable inference that Martinez knew that Osorio and Gibbs were involved in a drug transaction.

7

evidence of her presence in these situations made it more probable that she knew about and thus acted with intent to facilitate the conspiracies, the Court properly admitted this evidence. The Court also properly concluded that the evidence was not unduly prejudicial because it merely established her knowledge of her husband's drug-dealing activities, and was not evidence of her own bad conduct.

Martinez argues that the evidence of her presence at the grow house is inadmissible because "[p]rior presence is not a prior act," and "Rule 404(b) only permits evidence of 'a crime, wrong or other act.' There was no crime; there was no wrong and there was no act." (Appellant Br. at 16.) In support of this argument she cites Merriam Webster's definition of "act," which she says "demands something more than mere presence," and cannot "simply refer[] to being with one's spouse." (*Id.* at 21.)

Rule 402 provides for the admissibility of all relevant evidence unless it is prohibited by the United States Constitution, federal statute, other Federal Rules of Evidence, or rules prescribed by the Supreme Court. Rule 404(b) creates a narrow exception to this default of admissibility: it prohibits evidence of a person's past "crimes, wrongs, or other acts" when used for an improper propensity purpose. Thus, contrary to Martinez's contention, Rule 404(b) does not "only permit[]" evidence of past acts; rather, it only prohibits such evidence when used for an improper purpose, and is inapplicable to evidence not pertaining to past acts. Evidence that does not fall within the ambit of Rule 404(b) is admissible under the less-stringent, generally applicable evidentiary rules, which permit introduction of relevant evidence whose probative value is not substantially outweighed by a danger of unfair prejudice. *See* Fed. R. Evid. 401, 402, and 403.

8

The District Court properly found that the evidence of Martinez's presence in the drug-dealing situations was relevant for non-propensity purposes, and more probative than prejudicial, easily meeting the test under Rule 403. Thus, we need not decide whether presence constitutes an act for the purposes of Rule 404(b), because the evidence of Martinez's presence is admissible even if it is not 404(b) evidence.

IV.

For the reasons discussed above, we will affirm the judgment of the District Court.