UNITED STATES of America, Appellee,

v.

John PAUL, Defendant–Appellant.

No. 818, Docket 95–1672.

United States Court of Appeals,
Second Circuit.

Argued Jan. 6, 1997.

Decided March 26, 1997.

Mark Diamond, Brooklyn, NY, for appellant.

Kari A. Pedersen, Asst. U.S. Atty., Bridgeport, Conn. (Christopher F. Droney, U.S. Atty., on the brief), for appellee.

Before: NEWMAN, Chief Judge,
FEINBERG and McLAUGHLIN, Circuit
Judges.

JON O. NEWMAN, Chief Judge:

The primary issue on this appeal is whether a criminal defendant was entitled to a jury charge on a duress defense, arising in somewhat unusual circumstances. John Paul appeals from the November 14, 1995, judgment of the United States District Court for the District of Connecticut (T. F. Gilroy Daly, Judge), convicting him, after a jury trial, of possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g) (1994).

Paul contends that he was entitled to a jury charge on the defense of duress and raises additional challenges to his conviction and sentence. We agree that his testimony raised a factual issue concerning each element of the duress defense, and therefore reverse the judgment of conviction and remand for a new trial.

## Background

The undisputed evidence established that the defendant stood on a sidewalk in Stamford, Connecticut, and fired a few rounds of ammunition from an antique revolver. In addition, one eyewitness testified that she heard the gunshots, saw the defendant firing the gun, and heard one of the bullets pass close to her car windshield. A second witness testified that he heard the gunshots while he was inside his store, and that, when he looked outside fifteen or twenty seconds later, he saw the defendant holding the gun. Neither witness testified that the defendant fired the weapon at anyone.

The Government also introduced the spent shell casings recovered from the scene, presented testimony that the bullets had been manufactured in Illinois, and produced a certified record of Paul's prior felony conviction in the State of Connecticut.

On the day set for jury selection, Paul gave notice to the trial judge that he intended to interpose the defense of duress. Pursuant to the Government's request, the Judge conducted an evidentiary hearing to determine whether Paul was entitled to present a duress defense to the jury.

Testifying on his own behalf, Paul claimed that he had taken temporary possession of the gun from its owner to prevent the owner from using it to kill or injure him, and that he had fired the gun harmlessly toward the sidewalk, solely to prevent any bullets remaining in the chamber from being discharged by the owner in the event he regained possession of the weapon.

Paul gave the following account of the events leading up to his firing the gun. In the early morning hours of the day of the episode, he had been playing poker in a bar with four or five other men, including a man known to him only by the name "Shorty". After Paul won the final hand of the game, Shorty asked Paul for a loan of $100. When Paul refused, Shorty became angry, went outside to his car, and retrieved a bottle of whisky. From the bar, Paul also saw Shorty putting something else into his pocket. That other item turned out to be a gun.

Returning to the bar, Shorty continued to argue with Paul. As both left the bar, the argument escalated. Paul shoved Shorty, and Shorty pulled the gun out of his pocket and fired two shots at Paul's leg. Both shots missed.

At first, Paul ran for cover beside a parked car. He then ran back inside the bar, closed the door and held it shut, and continued watching Shorty through a small window. Although Shorty initially approached the door, he soon turned and began walking away in the direction of his car, placing the gun back into his pocket. At this moment, Paul decided to administer physical punishment to Shorty for shooting at him. Paul darted out of the bar, accosted Shorty, and tackled him to the ground. When Shorty reached for the gun, Paul grabbed it out of Shorty's hand, and sat on top of him. Paul then struck Shorty a few times, stating that he did not need a gun to deal with him.

Still in possession of the gun, Paul walked back toward the bar, firing the remaining bullets into the ground, and throwing the empty gun onto the floor in the bar. He testified that he fired the gun solely to ensure that it could no longer be used to injure or threaten him.

After hearing Paul's testimony, Judge Daly ruled that as a matter of law Paul had not alleged facts sufficient to entitle him to present a duress defense to the jury. Although Judge Daly found Paul's testimony could not establish the defense, he found it to be relevant to the crime of possession of ammunition. Thus, although Paul was not precluded from presenting his version of the facts to the jury, the jury was not charged on the duress defense.

Paul was sentenced under the armed career criminal statute, 18 U.S.C. § 924(e) (1994), to 262 months imprisonment and five

years of supervised release. He is currently serving his sentence.

## Discussion

In addition to renewing his claim concerning a duress defense, Paul contends that the evidence is insufficient to permit the jury to find the degree of possession that Congress contemplated in enacting section 922(g). He also alleges errors concerning the admission of evidence, the charge, and the sentence. In view of our disposition, we need discuss only the first two claims.

### 1. Duress Defense

 Duress is a legal excuse for criminal conduct if, "at the time the conduct occurred, the defendant was subject to actual or threatened force of such a nature as to induce a well-founded fear of impending death or serious bodily harm from which there was no reasonable opportunity to escape other than by engaging in the unlawful activity." *E.g., United States v. Bakhtiari,* 913 F.2d 1053, 1057 (2d Cir.1990) (citing *United States v. Mitchell,* 725 F.2d 832, 837 (2d Cir.1983)); *United States v. Agard,* 605 F.2d 665, 667 (2d Cir.1979). The defense fails if the defendant recklessly placed himself in a position in which it was probable that he would be subject to duress. *Id.* at 667.

 Upon a proper request, a defendant is entitled to a jury instruction on any defense theory for which there is a foundation in the evidence, *United States v. Kwong,* 69 F.3d 663, 667 (2d Cir.1995); *United States v. Bryser,* 954 F.2d 79, 87 (2d Cir.1992), even if the trial court determines that the evidentiary foundation of the defense theory is only tenuous, *United States v. Hurtado,* 47 F.3d 577, 584 (2d Cir.1995). In such a case, the factual issues underlying the theory should be resolved by the jury. *See United States v. Bifield,* 702 F.2d 342, 347 n. 2 (2d Cir. 1983).

 At the same time, we have recognized that it is appropriate for a court to hold a pretrial evidentiary hearing to determine whether a defense fails as a matter of law. *See id.* at 347; *see also Bakhtiari,* 913 F.2d

at 1057. If, after the hearing, the court finds that the defendant's evidence is insufficient as a matter of law to establish the defense, the court is under no duty to give the requested jury charge or to allow the defendant to present the evidence to the jury. *See United States v. Bailey,* 444 U.S. 394, 416–17, 100 S.Ct. 624, 638, 62 L.Ed.2d 575 (1980); *Agard,* 605 F.2d at 667.

The availability of the duress defense in this case turns on the point in time as to which the defendant faced imminent danger and lacked an opportunity to avoid the danger except by committing an unlawful act. The Government contends, and the District Court agreed, that the relevant time is when the defendant, still inside the bar, decided to come out in order to tackle Shorty and administer his own brand of physical punishment for shooting at Paul. Since, at that moment, Shorty was walking away, the Government argues that the defendant had an opportunity to avoid the danger that would later develop after Shorty pulled out his gun during their physical encounter.

[5] We conclude, however, that a jury would be entitled to find that the critical moment, for purposes of the duress defense, was not until Shorty pulled out his gun after the defendant had tackled him. A jury could find that the defendant came out of the bar believing that Shorty had replaced the gun in his pocket and that the defendant could "punish" Shorty without being in imminent fear of death or serious injury. A jury could further find that only when Shorty pulled the gun out of his pocket was the defendant confronted with the choice of grabbing the gun with its loaded bullets or risking death or injury by not doing so. Of course, a jury could also find that the defendant recklessly placed himself in a position in which it was probable that he would be subject to duress. *See Agard,* 605 F.2d at 667. The resolution of these competing interpretations of the circumstances properly lies within the purview of a jury.

To be entitled to the jury charge, Paul only had to raise a factual issue regarding each element of the defense. *See Bifield,* 702 F.2d at 347 n. 2. We believe he did so and

therefore hold that he was entitled to have the jury charged on the duress defense.

### 2. Congressional Intent Underlying 18 U.S.C. § 922(g)

Paul also argues that he is entitled to a reversal of the conviction on the grounds that 18 U.S.C. § 922(g) was not enacted to regulate the type of activity he engaged in. He argues that using section 922(g) to punish his transitory possession of the ammunition under circumstances of duress is unjust and contrary to congressional intent. In effect, he is challenging the sufficiency of the evidence to permit a conviction, a claim that, if valid, would bar a retrial.

Section 922(g) makes it unlawful for a convicted felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g) (1994). We have previously held that a section 922(g) conviction may be based on "proof that the possessed firearm previously traveled in interstate commerce," *United States v. Sorrentino*, 72 F.3d 294, 296 (2d Cir.1995) (citing *Scarborough v. United States*, 431 U.S. 563, 564, 97 S.Ct. 1963, 1964, 52 L.Ed.2d 582 (1977)), and that such a conviction is not foreclosed by the Supreme Court's ruling in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), regarding the interstate nexus requirements of federal statutes enacted pursuant to the Commerce Clause, *see Sorrentino*, 72 F.3d at 296.

█ Appellant contends that his possession was too fleeting to constitute the "possession" that the statute was intended to punish. Cases may be imagined where application of the statute would be at least highly problematic. For example, a person might observe a police officer's pistol slip to the floor while the officer was seated at a lunch counter. Picking the weapon up and immediately handing it to the officer would seem a questionable case for application of section 922(g) even if the helpful bystander had a felony conviction. We need not decide in this case whether section 922(g) applies to every instance in which a felon momentarily takes hold of a gun or ammunition because here the plaintiff, on his own version of the episode, grabbed the weapon and made the decision to hold and fire it until all of the bullets were discharged. Even if his action was as well intentioned as he claims, possession under these circumstances was not so fleeting as to extend the statute beyond its arguable limits.

To the extent that appellant's challenge to actionable "possession" is an attempt to assert the defense of necessity, we leave it to the District Court to determine at the retrial whether the evidence warrants submission of that defense. Though modern case law has blurred the common law distinction between necessity and duress, *see Bailey*, 444 U.S. at 410, 100 S.Ct. at 634–35, the distinction has not necessarily been obliterated, *see, e.g., id.* (destruction of dike in response to imminent threat illustrates duress; destruction to protect more valuable property illustrates necessity); *United States v. Newcomb*, 6 F.3d 1129, 1133 (6th Cir.1993) (necessity implies exercise of free will in choosing between two evils, whereas duress concerns action of another person that deprives the defendant of his free will); *see* Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 5.3–5.4 (1986) (duress is pressure of unlawful threat from another human being; necessity is pressure of natural physical forces). Since a necessity instruction was not requested and might not be requested on retrial, we prefer not to anticipate an issue that does not require decision at this point.

### Conclusion

Because it was error for the trial court to exclude Paul's duress defense, we reverse the judgment of conviction and remand for a new trial.