**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1384
_____

UNITED STATES OF AMERICA

v.

TYRONE FIELDS,
also known as TYRONE JOHNSON,
also known as OMAR FIELDS

Tyrone Fields,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-10-cr-00081-001)
District Judge: Honorable Cynthia M. Rufe
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 27, 2012

Before:   MCKEE*, *Chief Judge*, JORDAN, and VANASKIE, *Circuit Judges*

(Filed: December 5, 2012 )
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Tyrone Fields was convicted by a jury on one count of possession of a firearm by

a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and § 924(e).  Fields appeals,

arguing that the District Court abused its discretion by denying his motion to bifurcate the trial and denying his objection to the model jury instruction regarding the definition of possession. We reject both of Fields' arguments, and will affirm the District Court's judgment.

I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we set forth only those facts necessary to our analysis.

On March 22, 2009, at around 12:44 AM, Officer Steven Mitchell and Officer Eriberto DeJesus responded to a police radio call at 5663 Pentridge Street in Philadelphia. Shakima Manson, Fields' girlfriend, testified that she locked Fields out of their shared residence and then dialed 911 because she and Fields had an argument, and she believed that Fields was drunk and was planning "to open the door [to their residence] with [a] butter knife." (S.A. 180-181.)

Upon arriving at the residence, Officer Mitchell observed Fields on the porch. Fields appeared to be tampering with the lock on the door. Officer Mitchell exited his vehicle and "said something to gain [Fields'] attention." (S.A. 72). Fields walked toward Officer Mitchell, and Officer Mitchell observed that he had something metallic in his hand, later identified as a butter knife. Officer Mitchell instructed Fields to drop the knife, but Fields responded by placing the knife up his sleeve. Officer Mitchell placed Fields in a control hold and the knife fell to the ground. While in the control hold, Officer Mitchell frisked Fields for other weapons. In Fields' left coat pocket, Officer

2

Mitchell found a handgun. After securing the handgun, Officer Mitchell used the police radio to determine whether Fields carried a valid permit for the firearm. Fields did not have a valid permit, so Officer Mitchell placed Fields in custody.

During police questioning, Fields stated that he purchased the gun for protection because he had been shot approximately one year prior to his March 2009 arrest. During trial, Fields testified that in April 2008, a man known as "M Dot" shot him, while a second man, Kareem Johnson, "was right there beside him with another gun." (S.A. 192.) Soon thereafter Fields purchased the gun for self-protection.[1] After leaving the hospital, Fields stored the gun in a shoebox in the house that he and Manson occupied. Then shortly before the night of his arrest, Fields moved the gun to his mother's garage, because Manson did not want the gun to be accessible to her children.

On the night of Fields' arrest, Fields testified that he had an argument with Manson, went to a bar, and then returned home. When Manson did not let him into the house, he went to his mother's home. While on the steps of his mother's home, Kareem Johnson's brother drove by with M Dot sitting in the back seat. Johnson's brother and M Dot saw Fields and began following him. Fields testified that he was afraid and retrieved the gun from his mother's garage, and then tried to enter his shared residence with Manson using his neighbor's butter knife.

Fields moved for bifurcation on May 5, 2011, so that the jury would first decide whether he possessed a firearm before learning of his prior felony conviction. On May

---

[1] Fields also claimed that he borrowed the gun to protect his girlfriend, Manson, because she had been raped.

10, 2011, the District Court denied Fields' bifurcation motion. At the conclusion of the presentation of evidence, Fields objected to the portion of the standard Third Circuit Jury Instruction that informs the jury that unlawful possession of a firearm can be momentary or fleeting. The District Court denied his objection and refused to instruct the jury on a defense of "fleeting non-criminal possession." The jury returned a guilty verdict on May 18, 2011. On February 8, 2012, the District Court sentenced Fields to 180 months of imprisonment.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291.

## A.

Fields first argues that the District Court erroneously denied his motion to bifurcate the trial. Fields' argument rests on the assertion that evidence of his prior record would adversely influence the jury to find unjustified possession of a firearm. In support of his argument, Fields relies heavily on *Old Chief v. United States,* 519 U.S. 172, 174 (1997), in which the Supreme Court held that a district court abuses its discretion when it refuses to permit a defendant charged with violating § 922(g)(1) to stipulate to the prior conviction, and instead allows the prosecution to submit the full record of the prior judgment. The Supreme Court reasoned in *Old Chief* that "there can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant." *Id.* at 185. Fields contends that the holding in *Old Chief* logically requires that, to avoid altogether the prejudicial effect of a prior

4

conviction, the jury should first decide the possession prong of the felon-in-possession charge without knowing that the defendant is a convicted felon.

We have rejected contentions similar to those advanced by Fields in cases decided both before *Old Chief, see United States v. Jacobs,* 44 F.3d 1219 (3d Cir. 1995), and after, s*ee United States v. Higdon,* 638 F.3d 233 (3d Cir. 2011). Our prior precedents compel us to reject Fields' argument that bifurcation is mandated whenever a defendant stands trial on a felon-in-possession charge. *See Santos ex rel. Beato v. United States,* 559 F.3d 189, 196 (3d Cir. 2009) (Third Circuit Internal Operating Procedure 9.1 precludes one panel from overruling an earlier panel's precedential opinion).

In *Jacobs*, we held that bifurcation is not warranted where, as here, the defendant stood trial on a single count of possession of a firearm by a convicted felon. Canvassing the then-extant case law from our sister Courts of Appeals – *United States v. Collamare,* 868 F.2d 24 (1st Cir. 1989); *United States v. Birdsong*, 982 F.2d 481 (11th Cir. 1993); and *United States v. Barker,* 1 F.3d 957 (9th Cir. 1993) – we concluded that it would be inappropriate to separate out the elements of this possession coupled with status crime. In this regard, we expressed our agreement with the First Circuit's statement that, "[w]hen a jury is neither read the statute setting forth the [felon-in-possession] crime nor told of all the elements of the crime, it may, justifiably, question whether what the accused did was a crime." *Jacobs,* 44 F.3d at 1222 (quoting *Collamore,* 868 F.2d at 28). Accordingly, we held that, to ensure that the jury understands why the defendant's conduct is unlawful, the Government has a right to present all elements of the felon-in-possession crime without bifurcation. *Id.*

5

In *Higdon,* we addressed the question of whether the District Court abused its discretion in refusing (a) to inform the jury that the defendant was accused of the crime of possession of a firearm after having been convicted of a felony; (b) to allow the government to present to the jury stipulations that the defendant had been convicted of a felony and that the firearm in question had traveled in interstate commerce; and (c) to instruct the jury on all elements of the felon-in-possession charge. The defense in *Higdon* argued that *Old Chief* provided direct support for the District Court's decision to keep the jury in the dark with respect to the nature of the criminal charge and the fact of the defendant's prior felony conviction. We rejected this argument, explaining that *Old Chief* did not hold that the mere fact that a defendant would stipulate to his record rendered the prior conviction inadmissible. 638 F.3d at 241-42. We observed that "[i]n fact, [*Old Chief*] anticipated that a jury *would be informed* of the stipulation about a defendant's prior conviction." *Id.* at 241. Canvassing the case law from our sister Courts of Appeals after *Old Chief* was decided, we noted that "[o]ur analysis of *Old Chief* is consistent with other post-*Old Chief* decisions, which conclude that a district court may not entirely exclude a stipulated fact from the jury's consideration when that fact constitutes an element of an offense." *Id.* at 242. We elaborated that "failing to instruct the jury about the prior felony element of the § 922(g)(1) offense would have the impermissible effect of allowing the district court to modify a congressionally enacted criminal statute by eliminating an element of the crime through stipulation." *Id.* at 243. And while we declined to address the defense request in *Higdon* that the trial be bifurcated because the District Court had not ruled on that request, we did note that "we

6

have rejected a bifurcated procedure under similar circumstance," *id.* at 244 (citing *Jacobs,* 44 F.3d at 1223), and that "[s]ince our decision in *Jacobs*, every appellate court that has addressed whether a single count indictment under § 922(g)(1) should be entitled to a bifurcated trial has rejected the idea." *Id.* at 244 n.8 (citations omitted).

Fields has not cited any Court of Appeals' decision that upheld the bifurcation of the trial in the context of a single count felon-in-possession charge. On the contrary, Courts of Appeals have held that a trial court abuses its discretion by providing for a bifurcated trial in such a context. *See, e.g., United States v. Amante*, 418 F.3d 220, 225 (2d Cir. 2005) (granting a writ of mandamus to rectify a district court's abuse of discretion in bifurcating the trial of a single count felon-in-possession charge); *Barker*, 1 F.3d at 959 (granting mandamus relief because a "district court may not bifurcate the single offense of being a felon in possession of a firearm into multiple proceedings").

In light of this unbroken line of authority, we discern no error in the District Court's denial of a bifurcated trial here. Indeed, our decision in *Jacobs* cannot be reconciled with the position advanced by Fields. As we see no basis for concluding that *Jacobs* has been undermined by *Old Chief* or any other precedent, we are constrained to follow *Jacobs*. *See In re Lemington Home for Aged*, 659 F.3d 282, 294 n.6 (3d Cir. 2011) ("Even if our precedent is erroneous, however, it can only be overturned by this Court *en banc*."). *Jacobs,* the cases upon which *Jacobs* relied, and the decisions that have been decided after *Jacobs* hold that any prejudice from the jury learning of the fact of a prior felony can be mitigated by appropriate cautionary instructions, and the District

7

Court gave proper cautionary instructions in this case. Accordingly, Fields is not entitled to relief based upon the denial of his request for a bifurcated trial.

B.

Fields also contends that the District Court erred in instructing the jury that criminal possession of a firearm may be momentary or fleeting. Fields complains that the instruction is faulty because it fails to explain that "a defendant's contact [with the weapon] can be so brief and so minimal that it does not rise to the level of a *criminal intent to possess*." (Appellant's Br. 30.)

To the extent that Fields challenges the District Court's inclusion of the charge as a matter of law, we exercise plenary review. *United States v. Zehrback,* 47 F.3d 1252, 1260 (3d Cir. 1995). To the extent that Fields argues that the District Court's chosen language was confusing or ambiguous, "we review the trial court's expression for abuse of discretion." *Id.* at 1264. Specifically, we consider whether the charge as a whole adequately and fairly submitted the issues in the case to the jury in light of all the evidence. *Id.*

With regard to the possession prong of the felon-in-possession charge, the District Court instructed the jury as follows:

> Now, we are going to talk about the next element, knowing possession. To establish the second element of the offense, the government must prove that the defendant possessed the firearm in question. To possess means to have something within a person's control.
>
> The government does not have to prove that the defendant physically held the firearm, that is, he [was in] actual possession of it. As long as the firearm was within the

8

defendant's control, he possessed it. Keep in mind we are talking about the charged conduct that is on or about March 22nd, 2009 as stated in the indictment.

If you find that the defendant either had actual possession of the firearm or had the power and intention to exercise control over it, even though it was not in his physical possession, that is that he had the ability to take actual possession of the object when he wanted to do so, you m[a]y find that the government has prove[n] possession. Possession may be momentary or fleeting.

The law also recognizes that possession may be sole or joint. If one person alone possesses a firearm, that is sole possession. However, more than one person may have the power and intention to exercise control over a firearm. This is called joint possession. If you find that the defendant had such power and intention, then he possessed the firearm, even if he possessed it jointly with another.

Proof of ownership of the firearm is not required, nor must the government demonstrate that the defendant possessed the firearm with intent to cause harm or with knowledge that such possession was unlawful.

The government must prove that the defendant knowingly possessed the firearm described in the indictment. This means that the defendant possessed the firearm purposefully and voluntarily and not by accident or mistake. It also means that the defendant knew the object was a firearm.[2]

(S.A. 332-34.)

Fields concedes that the District Court's instruction was completely consistent with Third Circuit Model Jury Instruction 6.18.922G-4, and we discern no error in the District Court's articulation of the governing law. Specifically, it has been recognized that possession need only be "momentary or fleeting" to support a conviction under §

_____

[2] Upon request from Fields, the jury was also instructed on the defense of justification. Fields does not challenge the jury instruction on the justification defense.

9

922(g)(1). *See, e.g. United States v. Matthews,* 520 F.3d 806, 811 (7th Cir. 2008) ("[M]erely holding a firearm for a brief period of time is sufficient to constitute possession within the meaning of section 922."); *United States v. Teemer*, 394 F.3d 59, 63 (1st Cir. 2005) ("[B]revity [of possession of a firearm] alone does not preclude conviction."). Accordingly, the mere inclusion of the charge on momentary and fleeting possession does not undermine the jury's verdict.

Nor do we find the instruction confusing or misleading in the context of the evidence presented at trial. In asserting that the instruction should have informed the jury that possession may be so brief as to preclude a finding of criminal intent to possess, Fields relies on *United States v. Paul*, 110 F.3d 869 (2d Cir. 1997). *Paul* observed that a defense based upon momentary possession may exist, suggesting that a conviction could not be sustained where, for example, a felon notices a police officer's gun slip to the floor and picks it up for the officer. *Id.* at 872. Fields' possession of the handgun, however, was far from the fleeting instance hypothesized in *Paul*. By his own admission, Fields possessed the handgun for nearly a year prior to his March 2009 arrest. He claimed to have purchased the handgun for his personal protection after being involved in a shooting. Fields also admits to storing the handgun inside his home before moving it to his mother's garage. Even viewing his possession as beginning when he retrieved the gun from his mother's garage, Fields was in possession of the gun for a significant period of time on the night he was arrested. Under the circumstances and facts of this case, Fields cannot establish that the jury instructions failed to adequately and fairly submit the issue of possession to the jury.

## III.

For the foregoing reasons, we will affirm the District Court's judgment.